1  Leslie A. Cohen, Esq. (SBN: 93698)
       leslie@lesliecohenlaw.com
2  J'aime K. Williams (SBN: 261148)
       Jaime@lesliecohenlaw.com
3  LESLIE COHEN LAW, PC
   506 Santa Monica Bl., Ste 200
4  Santa Monica, CA 90401
   Telephone:  (310) 394-5900
5  Facsimile:  (310) 394-9280

6  [Proposed] Counsel for
   Debtor and Debtor-in-Possession

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11                                    )
   In re                             )
12                                    )
   LNI CUSTOM MANUFACTURING, INC.    )    Case No. 2:11-bk-12416
13                                    )
        Debtor and Debtor-in-Possession  )    Chapter 11
14                                    )
                                      )    DEBTOR'S EMERGENCY MOTION TO
15                                    )    APPROVE USE OF CASH COLLATERAL;
                                      )    MEMORANDUM OF POINTS AND
16                                    )    AUTHORITIES; DECLARATION OF SCOTT
                                      )    BLAKELY IN SUPPORT THEREOF
17                                    )
                                      )    (Application for Hearing on Shortened Notice
18                                    )    Concurrently Filed)
                                      )
19  _____  )

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

PAGE

I.      STATEMENT OF FACTS ............................................................................. 2
        A.      The Debtor .................................................................................. 2
        B.      The Debtor's Assets and Liabilities................................................ 2
        C.      The Debtor's Financial Performance ............................................. 2
        D.      The Debtor's Financial Difficulties ............................................... 2
        E.      Secured Claims Asserted Against Debtor's Cash Collateral................ 3
        F.      Cash Collateral Balance ............................................................... 4
        G.      The Debtor's Cash Collateral Proposal ......................................... 4
                1.      Budget ............................................................................ 4
                2.      Replacement Lien............................................................. 5
                3.      Reservation of Rights ...................................................... 5
                4.      Financial Reporting........................................................... 5
                5.      Final Hearing on this Motion ........................................... 5

II.     COMPLIANCE WITH F.R.B.P. 4001(c) and L.B.R. 4001-2 ................................ 5

III.    SUMMARY OF ESSENTIAL TERMS ............................................................. 6

IV.     THE DEBTOR SHOULD BE AUTHORIZED TO USE ANY CASH
        COLLATERAL OF COMERICA PURSUANT TO 11 U.S.C. § 363 ....................... 6
        A.      The Adequate Protection Burden ................................................. 8
        B.      The Debtor Has Satisfied Their Adequate Protection Burden................ 10
                1.      Comerica's Interests Are Adequately Protected by
                        the Proposed Replacement Liens................................. 10
                2.      Comerica Is Adequately Protected by the Maintenance
                        Preservation of the Debtor's Business......................... 11

V.      GOOD CAUSE EXISTS FOR HEARING THIS MOTION ON
        AN EMERGENCY BASIS .......................................................................... 12

VI.     THE COURT SHOULD SCHEDULE A FINAL HEARING ON THIS
        MOTION AS SOON AS POSSIBLE IN ACCORDANCE WITH
        THE REQUIREMENTS OF THE BANKRUPTCY RULES ..................................... 13

VII.    THE NOTICE OF THIS MOTION PROPOSED TO BE GIVEN TO
        CREDITORS AND OTHER PARTIES-IN-INTEREST IS
        APPROPRIATE UNDER THE FACTS AND CIRCUMSTANCE
        OF THE DEBTOR'S CASE.......................................................................... 14

VIII.   CONCLUSION  .......................................................................................... 14

1

## TABLE OF AUTHORITIES

2

**PAGE**

3

Cases

4

In re Anderson, 86 B.R. 877, 889 (Bankr. N.D. Ind. 1988)............................................ 9

5

In re Cann & Saul Steel Co., 76 B.R. 479, 483 (E.D. Pa. 1987) ................................... 12

6

In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n.21 (9th Cir. 1985)....................... 13

7

In re Century Inv. Fund, VII Ltd. Partnership, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) ............................ 9

8

In re Delta Resources, Inc., 54 F.3d 722, 730 (11th Cir.), cert. denied, 64 U.S.L.W. 3348
     (1995) ................................................................................................................... 9

9

In re Elmore, 94 B.R. 670, 677 (Bankr. C.D. Cal. 1988) .............................................. 9

10

In re Glasstream Boats, Inc., 110 B.R. 611, 612 (M.D. Ga. 1990) ............................... 12

11

In re Johnson, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) ............................................. 9

12

In re Karl A. Neise, Inc., 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981)............................. 12

13

In re Kessler, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) ............................................... 9

14

In re Kidsstop of America, Inc., 64 B.R. 397, 401 (M.D. Fla. 1986) ........................... 11

15

In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990) ...................... 8

16

In re Martin, 761 F.2d 472 (8th Cir. 1985)................................................................... 11

17

In re McCombs Properties VI, Ltd., 88 B.R. 261 (Bankr. C.D. Cal. 1988)............... 8, 9, 10, 11, 12

18

In re Pine Lake Village Apartment Co., 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982)....... 12

19

In re Stein, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982).................................................. 12

20

In re Sullivan Ford Sales, 2 B.R. 350, 355 (Bankr. D.Me. 1980)................................. 13

21

In re Westchase I L.P., 126 B.R. 692, 694-95 (W.D.N.C. 1991) ................................... 9

22

Ledgemore ................................................................................................................ 10

23

Timbers 8, 9, 10

24

United Savings v. Timbers of Inwood Forest, 484 U.S. 365, 108 S.Ct. 626 (1988) ........ 8

25

26

27

28

Statutes

§ 363(e) .................................................................................................................... 9

§§ 361  10

11 U.S.C. § 506(a) ................................................................................................... 11

362(d)(1) ............................................................................................................ 8, 10

Section 363 (c)(2) ....................................................................................................... 7

Section 363(c)(3) ...................................................................................................... 12

Section 363(e) ....................................................................................................... 8, 9

Sections 361 ............................................................................................................... 8

Rules

Rule 4001 ............................................................................................................ 13, 14

Treatises

Collier on Bankruptcy 15th Ed. Revised, ¶ 552.02[1] (1998) ..................................... 8

1  TO THE HONORABLE ALAN AHART, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF

2  THE UNITED STATES TRUSTEE; SECURED CREDITORS, AND THE TWENTY LARGEST UNSECURED

3  CREDITORS:

4  LNI Custom Manufacturing, Inc., a California corporation, the debtor and debtor-in-possession herein

5  (the "Debtor"), hereby moves the Court, on an emergency basis, for an order (i) authorizing the Debtor to use

6  any cash collateral of any secured creditors holding security interests in cash collateral, and to grant to such

7  secured creditors post-petition replacement liens as and for adequate protection of the Debtor's use of any

8  cash collateral of such secured creditors, on the terms set forth herein; and (ii) setting a final hearing on this

9  Motion.

10  This Motion is made and based upon the foregoing allegations and representations, the

11  Memorandum of Points and Authorities and the Declaration of Scott Blakely (the "Blakely Declaration")

12  attached hereto, the papers, pleadings and other documents on file in the Debtor's Chapter 11 case, and

13  upon such other evidence, both oral and documentary, that may be submitted to the Court at or before the

14  time of the hearing on this Motion.

15  WHEREFORE, the Debtor requests that this Court enter its order:

16  1.  Authorizing the Debtor's immediate use of any cash collateral of secured creditors

17  holding security interests in cash collateral, pursuant to the terms and conditions contained in this

18  Motion, pending a final hearing on notice to creditors;

19  2.  Setting a final hearing on this Motion; and

20  3.  Granting to the Debtor such other and further relief as may be just and appropriate in

21  accordance with the circumstances of this case.

22  Dated: January 21, 2011                                      Leslie Cohen Law, PC

23

24

25                                                              _____/s/ Leslie A. Cohen_____

26                                                              Leslie A. Cohen
                                                                [Proposed] Counsel for Debtor and Debtor-in-
                                                                Possession

27

28

2

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.

<u>STATEMENT OF FACTS</u>

A.    <u>The Debtor</u>.

The Debtor, established in 1995, produces custom metal fabricates from its facilities in Hawthorne, California. Specifically, it designs, manufactures, sells and installs custom sign and shelter solutions for transit systems nationwide.  The Debtor's clients include Coast Transit, the Port of Los Angeles, and Kansas City Area Transportation.  The Debtor's competitors include other manufacturers such as Tolar Manufacturing, Brasco International, and other local sign companies.

Scott Blakely ("Blakely") is the Debtor's president and 100% share owner, and oversees the day-to-day operations of the Debtor.  Geoff Wallings maintains the Debtor's books and records.

The Debtor leases 15,000 square feet for its operations in Hawthorne, California, where it is also headquartered.  It leases directly from Bus Stop LLC.  The Debtor currently employs approximately 39 employees.

The Debtor briefly opened a manufacturing facility in Mexico to supplement its production beginning in 2006, but had to cease its operations there in 2010.

B.    <u>The Debtor's Assets and Liabilities</u>.

The Debtor's current assets amount to approximately $2.34 million which consists primarily of receivables, inventory, and fixed assets. The Debtor currently has liabilities of approximately $3.62 million which consists primarily of accounts payable and loans with Comerica Bank ("Comerica").

C.    <u>The Debtor's Financial Performance</u>.

The Debtor's total revenues last year were $6.21 million.  Based on the Debtor's historical financial performance, the Debtor has prepared a cash flow budget, which is attached as Exhibit "A" to the Blakely Declaration.

D.    <u>The Debtor's Financial Difficulties</u>.

The Debtor's financial difficulties are the result of steadily decreasing sales in an exceptionally difficult economic climate.  Since 2008, the Debtor's revenues have dropped off more than $4 million.  In 2010, this resulted in a net loss to the Debtor of $2.4 million.

   E.    Secured Claims Asserted Against Debtor's Cash Collateral.

   The Debtor believes there are two (2) secured creditors: North American Production Sharing, Inc. ("NAPS") and Comerica.  NAPS asserts a lien on one-third of Blakely's house for a loan of approximately $766,000 made in 2006 to aid Debtor's production plans in Mexico. This lien is second to the interests of Comerica.

   In November 2005, the Debtor established an original line of credit with Comerica for $400,000, with subsequent extension agreements being made through September 2009. The new amount of this loan is approximately $1,296,000.  In addition, the Debtor opened a line of credit for its equipment in July 2006, which was subsequently modified into a 60-month term loan in August 2007.  This liability has been reduced to approximately $96,000.  These claims are secured by the Debtor's assets, in addition to a personal guarantee made by Blakely.

   F.    Collateral Balance

        As of the Petition Date, the Debtor's collateral balance is as follows:

        Cash - $173,000
        Accounts Receivable - $1,241,000
        Inventory - $206,000

   G.    The Debtor's Cash Collateral Proposal.

   The Debtor proposes to use funds claimed as cash collateral by Comerica in connection with the continued operation of the Debtor's business, in accordance with the provisions of the Debtor's cash flow budget attached as Exhibit "A" to the Blakely Declaration.  The Debtor proposes to use any cash collateral of Comerica pursuant to the terms and conditions set forth below:

        1.    Budget.  The Debtor will be authorized to make the expenditures provided for in the budget monthly, and if necessary, to exceed the amounts set forth the budget by as much as 15% of budget total; however, if the Debtor's revenues increase, then the Debtor's expenditures may exceed the amount of the expenditures set forth in the budget in proportion to the increase in actual revenues from budgeted revenues.  Any expenditure in excess of this authorization will require the written approval of Comerica, or further order of the Court after appropriate notice.  Budget savings in any month may be carried over and used by the Debtor in subsequent months (i.e., to account for changes in the timing of expenditures by the Debtor).  After the expiration of the term of the budget, the Debtor will be able to obtain use of any cash

1  collateral of Comerica by filing and serving an amended budget; if no objection to the terms of such budget is

2  filed within ten (10) days after the service of such budget, the budget will be deemed to have been approved.

3          2.      <u>Replacement Lien</u>.  As and for adequate protection of the Debtor's use of any cash

4  collateral of Comerica, Comerica will be granted replacement liens in the Debtor's post-petition cash,

5  accounts receivable and inventory, and the proceeds of each of the foregoing, to the same extent and priority

6  as any duly perfected and unavoidable liens in cash collateral held by Comerica as of the Petition Date,

7  limited to the amount of any cash collateral of Comerica as of the Petition Date, to the extent that any cash

8  collateral of Comerica is actually used by the Debtor.

9          3.      <u>Reservation of Rights</u>.  The Debtor and all other parties-in-interest will reserve any

10  and all rights that they may have to object to the claims of Comerica and to object to the validity, priority and

11  extent of Comerica's liens, if any, encumbering the Debtor's assets.

12          4.      <u>Financial Reporting</u>.  The Debtor will provide to Comerica all interim statements and

13  operating reports required to be submitted to the Office of the United States Trustee, and monthly cash flow

14  reports, broken down by the expense line items contained in the budget, within 25 days after the end of each

15  monthly period after the Petition Date.

16          5.      <u>Final Hearing on this Motion</u>.  The Debtor reserves the right to seek, at the final

17  hearing on this Motion, use of cash collateral different from that set forth herein.

18          Based upon the budgets set forth on Exhibit "A," the Debtor believes that this Court should

19  authorize the Debtor's continued use of cash collateral in connection with their ongoing business operations.

20  II.

21  <u>COMPLIANCE WITH F.R.B.P. 4001(c) and L.B.R. 4001-2</u>

22          Pursuant to FRBP 4001(c)(1)(B) and LBR 4001-2(b), the Debtor submits that the relief requested

23  pertaining to the Debtor's proposed use of cash collateral does not contain any of the following Provisions.

24  (i)      a grant of priority or a lien on property of the estate under § 364(c) or (d);

25  (ii)     a determination of the validity, enforceability, priority, or amount of a claim that arose before the

26          commencement of the case, or of any lien securing the claim;

27

28

(iii)   a  prepetition secured debt to be post-petition debt or that use post-petition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b);

(iv)   a waiver or modification of Code provisions or applicable rules relating to the automatic stay;

(v)   a waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364

(vi)   the establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order;

(vii)   a waiver or modification of the applicability of non-bankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien;

(viii)   a release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action;

(ix)    the indemnification of any entity;

(x)   a release, waiver, or limitation of any right under § 506(c); or

(xi)    the granting of a lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a).

(xii)   A grant of cross-collateralization protection;

(xiii)   Provisions or findings of that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor;

(xiv)   Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien;

(xv)   Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law;

(xvi)  Provides disparate treatment for the professionals retained by a creditors' committee from that

provided for the professionals retained by the debtor with respect to a professional fee carve out; or

(xvii)  Primes any secured lien.

## III.

## SUMMARY OF ESSENTIAL TERMS

The Essential Terms are as follows:

1.   Interim Borrowing Limit: Not applicable.

2.   Maximum Borrowing Available on a Final Basis: Not applicable.

3.   Borrowing Conditions: Not Applicable

4.   Interest Rate: Not applicable

5.   Maturity Dates: Not applicable.

6.   Events of Default: Not applicable.

7.   Use of Funds Limitation:  Pursuant to Budget attached hereto as Exhibit A.

8.   Protections Afforded under 11 U.S.C. §§ 363 and 364: Comerica will be granted replacement liens in the Debtor's post-petition cash, accounts receivable and inventory, and the proceeds of each of the foregoing, to the same extent and priority as any duly perfected and unavoidable liens in cash collateral held by Comerica as of the Petition Date, limited to the amount of any cash collateral of Comerica as of the Petition Date, to the extent that any cash collateral of Comerica is actually used by the Debtor.

## IV.

## THE DEBTOR SHOULD BE AUTHORIZED TO USE ANY

## CASH COLLATERAL OF COMERICA PURSUANT TO 11 U.S.C. § 363

The provisions of Section 363(c)(2) of the Bankruptcy Code govern a debtor's use of cash collateral. Section 363 (c)(2) provides, in pertinent part, as follows:

> The trustee [or debtor in possession] may not use, sell or
> lease cash collateral…. unless:
> (A)    each entity that has an interest in such cash collateral
>           consents; or
> (B)    the court, after notice and a hearing, authorizes such
>           use, sale, or lease in accordance with the provisions of this section.

7

11 U.S.C. § 363(c)(2).

Therefore, a court may authorize a debtor's use of a creditor's cash collateral in the absence of creditor consent.  See, 11 U.S.C. § 363(e).

Section 363(e) of the Bankruptcy Code provides that, upon the request of an entity that has an interest in property proposed to be used by the debtor, the court may prohibit or condition such use "as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

The Bankruptcy Code clearly delineates the party which bears the burden of proof on the relevant cash collateral issues:

> (1)     the trustee [or debtor in possession] has the burden of proof on the issue of adequate
>         protection; and
>
> (2)     the entity asserting an interest in property has the burden of proof on the issue of the validity,
>         priority, or extent of such interest.

11 U.S.C. § 363(o).

Therefore, this Court may authorize the Debtor's use of any cash collateral of Comerica upon determining that the interests of Comerica in the cash collateral will be adequately protected.  In re McCombs Properties VI, Ltd., 88 B.R. 261 (Bankr. C.D. Cal. 1988).

A.     The Adequate Protection Burden.

In the case, United Savings v. Timbers of Inwood Forest, 484 U.S. 365, 108 S.Ct. 626 (1988), the United States Supreme Court analyzed and quantified the parameters of the "interest in property," referenced in Sections 361, 362(d)(1), and 363(e), which the Bankruptcy Code undertakes to protect, where required, through adequate protection.  This analysis led the Supreme Court in Timbers to the conclusion that the "interest in property" referenced in the above sections of the Bankruptcy Code means, and is limited to, the "value of the Collateral."  Timbers, 108 S.Ct. at 630.  Therefore under the Timbers analysis, the adequate protection provisions in the Bankruptcy Code protects a secured creditor only from a potential diminution in the value of that creditor's collateral during the post-petition period.  Id.

The "value" oriented adequate protection analysis adopted by the Supreme Court in the Timbers case has been closely adhered to by the courts which have subsequently had occasion to address this issue. See e.g., In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990) (so long as the receivables

being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor

is granted a security interest, the creditor is adequately protected);  In re Johnson, 90 B.R. 973, 978 (Bankr.

D. Minn. 1988) (secured creditor is not impaired and is not entitled to receive adequate protection payments

where value of collateral does not decline); In re Century Inv. Fund, VII Ltd. Partnership, 96 B.R. 884, 887

(Bankr. E.D. Wis. 1989) (where value of collateral appears to be stable, secured creditor is not entitled to

adequate protection payments); In re Anderson, 86 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (secured creditor

was required to show a necessity for adequate protection by demonstrating a decline in asset value from the

petition date); In re Kessler, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under Timbers, movants are not entitled

to adequate protection payments, as there was no showing that property was depreciating in value).

In In re Elmore, 94 B.R. 670, 677 (Bankr. C.D. Cal. 1988), the Honorable Samuel Bufford held that:

> [T]he Court finds that the property is not depreciating in value.  In consequence, the Court finds that Lomas [Secured Creditor] is adequately protected by the value of its collateral… The right to receive payments is a simple contract right, that supports only a claim in the bankruptcy case.  There is no other adequate protection to which Lomas is entitled under the Bankruptcy Code.

Elmore, supra, 94 B.R. at 677 (citation omitted).

In In re McCombs, the Honorable John E. Ryan held that:

> The analysis of the Supreme Court in Timbers is instructive here.  The phrase "interest in property" in § 363(e) means the value of the collateral.  That is the interest that I am required to protect.  If that value is likely to diminish during the time of the use, adequate protection must be provided by the Debtor.

McCombs, supra, 88 B.R. at 266 (emphasis added).  Accord, In re Delta Resources, Inc., 54 F.3d 722, 730

(11th Cir.), cert. denied, 64 U.S.L.W. 3348 (1995); In re Westchase I L.P., 126 B.R. 692, 694-95 (W.D.N.C.

1991).

Under the strict value-oriented analysis adopted by the Supreme Court in Timbers (and adhered to

by the well-reasoned cases cited above), the adequate protection inquiry under Section 363(e) is limited to

determining whether the debtor's use of a secured creditor's cash collateral will reduce the value of the

creditor's collateral base.  If the debtor can establish that the proposed use of the collateral will not cause a

decline in the value of the collateral, then court authorization of such use is appropriate.

1    Not infrequently, a secured creditor will contend that it somehow has a right to be paid adequate

2  protection payments, post-petition, even where no decline in the value of the collateral is either occurring or

3  anticipated.  The Supreme Court in Timbers expressly rejected this very contention stating:

4
         It is obvious (since §§ 361 and 362(d)(1) do not entitle the secured creditor to immediate
5        payment of the principal of his collateral) that this "realization" is to "result" not at once, but
         only upon completion of the reorganization.  It is then that he must be assured "realization …
6        of the indubitable equivalent" of his collateral.

7  Timbers, 108 S.Ct. at 633.

8    The law, then, is clear:  no adequate protection payments are required unless there is a decline post-

9  petition in the value of the secured creditor's collateral which actually impairs the creditor's secured claim.  As

   set forth in detail below, and as evidenced by the Declaration, the Debtor's proposal to use any cash
10
   collateral of Comerica provides adequate protection to Comerica.
11
          B.    The Debtor Has Satisfied its Adequate Protection Burden
12
               1.    Comerica's Interest Is Adequately Protected by the Proposed Replacement Liens.
13
     Under the Debtor's cash collateral proposal, Comerica's interests in any cash collateral will be
14
   adequately protected from a diminution in value through replacement liens granted to Comerica and through
15
   the maintenance and preservation of the Debtor's business.
16
     Under the Debtor's proposal, Comerica will be granted a post-petition replacement lien on cash,
17
   accounts receivable, inventory, and proceeds acquired and/or generated with any cash collateral with a value
18
   equal to the amount of any pre-petition cash collateral expended by the Debtor.  For example, if the Debtor
19
   uses $100,000 of pre-petition cash collateral, Comerica will be granted a lien, to the extent of $100,000, in the
20
   proceeds of the cash collateral.
21
     However, since the function of adequate protection is only to preserve and not to increase the
22
   collateral subject to a secured creditor's interest, any additional value created through the Debtor's use of the
23
   cash collateral, whether in the form of inventory, accounts receivable or cash, will not be subject to a
24
   replacement lien, but will instead constitute an asset of the estate that all creditors will ultimately be able to
25
   look for payment.  See, Ledgemore, supra, 116 B.R. at 343 (so long as the receivables being collected and
26
   used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security
27

28
                                    10

1    interest, the creditor is adequately protected).  Thus, Comerica's replacement liens should be limited to the

2    amount of any cash collateral in existence as of the Petition Date.

3          Although the replacement lien will, in concept, ensure the preservation of Comerica's interest in the

4    cash collateral, in reality, the liens will perform this function only if the Debtor, in fact, generate at least one

5    dollar of value for every dollar of cash collateral expended.  The evidence that addresses this issue is

6    contained in the Blakely Declaration and specifically the budget, which is attached as Exhibit "A" to the

7    Blakely Declaration.  The budget indicates that the Debtor will operate on a cash flow positive basis during

8    the budgeted period, and that its assets will increase in value during such period.

9          The Debtor believes that the projections of their business operations as set forth in the budget are

10   reasonable.  As set forth in the Blakely Declaration, the business assumptions underlying the operations

11   projected in the budget are reasonable and are essentially in accordance with the Debtor's historical

12   experience, as adjusted to take into account recent or projected events (e.g., the recent downturn in the

13   economy).  Moreover, although the attached budget reflects a projected decrease in cash on hand over the

14   next 60 days, that decrease will be offset by a corresponding increase in accounts receivable.  Accordingly,

15   the Debtor believes that the budget establish that the proposed replacement liens being granted to Comerica

16   will adequately protect Comerica's alleged interests.

17         In summary, the Blakely Declaration provides evidence to establish with reasonable certainty that the

18   Debtor's use of any cash collateral of Comerica will result in an increase in the estates' collateral pool,

19   thereby adequately protecting Comerica's interests in any cash collateral.

20                    2.    Comerica is Adequately Protected by the Maintenance and Preservation of the

21                           Debtor's Business.

22         To determine the sufficiency of adequate protection, a bankruptcy court should:  (i) establish the

23   value of the secured creditor's interest; (ii) identify the risk, if any, to the value of the secured creditor's cash

24   collateral resulting from the debtor's request for the use of the cash collateral; and (iii) determine whether the

25   debtor's adequate protection proposal protects the value of the cash collateral as nearly as possible against

26   risk to that value consistent with the concept of indubitable equivalence.  McCombs, supra, 86 B.R. at 267

27   (quoting In re Martin, 761 F.2d 472 (8th Cir. 1985)).

28

1    To establish the value of a secured creditor's interest, the bankruptcy court must consider the

2   purpose of the valuation, and the proposed disposition or use of the secured property.  See, 11 U.S.C. §

3   506(a).  "One of the primary factors to be considered in valuation is whether the subject property is to be used

4   and retained by the debtor or whether the property is to be disposed of."  In re Kidsstop of America, Inc., 64

5   B.R. 397, 401 (M.D. Fla. 1986).

6    Here, any cash collateral consists of, among other things, the receipts generated by the operations of

7   the Debtor's businesses.  The value of any such cash collateral will depend, in part, upon the preservation of

8   the Debtor as a going concern.  It follows that the risk to this going concern value of cash collateral (which

9   risk is required to be identified by the Court in the McCombs test above) consists of any cessation in the

10  Debtor's business operations.  See, In re Glasstream Boats, Inc., 110 B.R. 611, 612 (M.D. Ga. 1990) (it was

11  in the best interest of both the debtor-in-possession and the creditor that the debtor "continue in its operation

12  as a manufacturing facility" and that "denial of this motion would result in another shut down of the assembly

13  line, which the court doesn't feel is in the best interest of either party."); In re Cann & Saul Steel Co., 76 B.R.

14  479, 483 (E.D. Pa. 1987) (continued operation of manufacturer debtor was in the best interest of secured

15  creditor in that it was likely that the secured creditor would realize more funds than it would by requiring the

16  debtor to cease operations); In re Stein, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (the bankruptcy court

17  allowed a debtor to use cash collateral where the secured party had no equity cushion for protection, finding

18  that the use of the cash collateral was necessary to the continued operations of the debtor, and that the

19  creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]"); In

20  re Pine Lake Village Apartment Co., 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) (debtor permitted to use cash

21  collateral generated from rental income to preserve the value of real property which also secured creditor's

22  claim); In re Karl A. Neise, Inc., 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor

23  adequately protected by lien in post-petition property acquired by debtors; debtors can use cash collateral "in

24  the normal operation of their business").

25    As discussed in the Blakely Declaration, even a temporary cessation of the Debtor's ability to operate

26  its business, caused by any lack of access to any cash collateral, will result in a substantial diminution of

27  Comerica's collateral, as its customers orders will not be fulfilled and will likely turn to competitors of the

28  Debtor.  In contrast, maintenance of the Debtor's ongoing operations will preserve the value of Comerica's

1   interest in any cash collateral as nearly as possible against any risk to that value, thus providing adequate

2   protection.

3                                            V.

4                        GOOD CAUSE EXISTS FOR HEARING THIS

5                        MOTION ON AN EMERGENCY BASIS

6          In recognition of the fact that Section 363(c) of the Bankruptcy Code operates to deprive a debtor of

7   the use of critical operating capital as of the filing of the debtor's Chapter 11 petition, Congress specifically

8   provided in Section 363(c)(3) that a hearing on cash collateral "shall be scheduled in accordance with the

9   needs of the debtor." Accordingly, the Bankruptcy Code expressly anticipates and authorizes expedited

10  hearings on the issue of cash collateral use. See, 11 U.S.C. § 363(c)(3).

11         Similarly, the Ninth Circuit Court of Appeals has recognized that immediate interim relief may be

12  crucial to the success of a corporate reorganization:

13

14         We realize that 'in certain circumstances, the entire reorganization effort may be thwarted if
           emergency leave is withheld' and that reorganization under the Bankruptcy Code 'is a
15         perilous process, seldom more so than at the outset of the proceedings when the debtor is
           often without sufficient cash flow to fund essential business operations.' It is for this reason
16         that Congress specified that hearings concerning the use of cash collateral 'shall be
           scheduled in accordance with the needs of the debtor.'

17  In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n.21 (9th Cir. 1985) (emphasis added) (citations omitted).

18  See also, In re Sullivan Ford Sales, 2 B.R. 350, 355 (Bankr. D.Me. 1980).

19         In this case, the Debtor employs approximately 39 employees in its operations. As set forth in the

20  Blakely Declaration, the Debtor must have the immediate use of any cash collateral to meet payroll

21  obligations, to meet the daily costs and expenses of operating their business, to promptly pay their vendors,

22  and to acquire goods and services to keep their business operating. Any delay in the Debtor's ability to meet

23  one or more of the aforementioned operating needs could deprive the Debtor of its ability to successfully

24  reorganize its financial affairs.

25  ///

26  ///

27  ///

28

                                            13

## VI.

### THE COURT SHOULD SCHEDULE A FINAL HEARING ON THIS

### MOTION AS SOON AS POSSIBLE IN ACCORDANCE WITH

### THE REQUIREMENTS OF THE BANKRUPTCY RULES

By this Motion, the Debtor is requesting that the Court schedule a final hearing on this Motion as soon as possible in accordance with the requirements of the Federal Rules of Bankruptcy Procedure.

Rule 4001 of the Federal Rules of Bankruptcy Procedure provides that the Court may commence a final hearing on this Motion no earlier than fifteen (15) days after service of the Motion. The Debtor needs to obtain as promptly as possible approval of the final use of cash collateral in order to ensure the Debtor's employees and vendors that the Debtor will be able to pay, during the course of this case, its ordinary operating expenses including, without limitation, payroll and the expenses of maintenance and operation of its business. A final hearing on this Motion should be held as soon as possible after the expiration of the fifteen (15) day period provided for by Rule 4001 of the Federal Rules of Bankruptcy Procedure, in order to prevent the substantial damage to the Debtor's business which would result from any loss of support of the Debtor's customers, employees and vendors caused by a lack of confidence that the Debtor will have the ability to use cash collateral during its case.

## VII.

### THE NOTICE OF THIS MOTION PROPOSED TO BE GIVEN TO

### CREDITORS AND OTHER PARTIES-IN-INTEREST IS APPROPRIATE

### UNDER THE FACTS AND CIRCUMSTANCES OF THE DEBTOR'S CASE

As of the filing of this Motion, no trustee, examiner or Committee has been appointed in the Debtor's Chapter 11 case. In accordance with the provisions of Bankruptcy Rule 4001(b)(1), notice of this Motion has been given via facsimile, hand delivery or overnight mail to the Office of the United States Trustee, to Comerica, its counsel of record, and to the Debtor's twenty largest general unsecured, non-insider creditors.

Because of the exigencies of the Debtor's case and the irreparable harm to the Debtor, its Chapter 11 estate, and all parties-in-interest that will ensue if the relief requested herein is not granted, the Debtor submits that no further notice need be given. No previous motion for the relief sought herein has been made to this or to any other court.

VIII.

CONCLUSION

Based upon the foregoing, the Debtor respectfully request that this Court enter its order:

1.      Finding that Comerica's interests in any cash collateral are adequately protected;

2.      Authorizing, on an interim basis pending final hearing on notice to creditors, the Debtor's
immediate use of any cash collateral of Comerica pursuant to the terms and conditions
contained in this Motion;

3.      Setting a final hearing on this Motion; and

4.      Granting to the Debtor such other and further relief as the Court may deem just and proper.

Dated: January 21, 2011                                        Leslie Cohen Law, PC


                                                               _/s/ Leslie A. Cohen_
                                                               _____
                                                               Leslie A. Cohen
                                                               [Proposed] Counsel for Debtor and Debtor-in-
                                                               Possession

1

## DECLARATION OF SCOTT BLAKELY

2      I, Scott Blakely, hereby declare as follows:

3      1.      I am over 18 years of age. I am the President of LNI Custom Manufacturing Inc. (the "Debtor"),

4  the debtor and debtor-in-possession in the above-captioned bankruptcy cases. Unless otherwise stated, I

5  have personal knowledge or information of the facts set forth herein and, if called as a witness, could and

6  would testify competently thereto.

7      2.      I make this declaration in support of the Debtor's Emergency Motion To Approve Use Of Cash

8  Collateral.

9      3.      The Debtor proposes to use funds claimed as cash collateral by Comerica in connection with

10  the continued operation of the Debtor's business, in accordance with the provisions of the Debtor's cash flow

11  budget attached hereto as Exhibit "A" to the Blakely Declaration.

12      4.      The budget indicates that the Debtor will operate on a cash flow positive basis during the

13  budgeted period, and that its assets will increase in value during such period.

14      5.      The Debtor believes that the projections of their business operations as set forth in the budget

15  are reasonable.   Although the attached budget reflects a projected decrease in cash on hand over the next

16  60 days, that decrease will be offset by a corresponding increase in accounts receivable. The business

17  assumptions underlying the operations projected in the budget are reasonable and are essentially in

18  accordance with the Debtor's historical experience, as adjusted to take into account recent or projected

19  events (e.g., the recent downturn in the economy).  Accordingly, the Debtor believes that the budget establish

20  that the proposed replacement liens being granted to Comerica will adequately protect Comerica's alleged

21  interests.

22      6.      Even a temporary cessation of the Debtor's ability to operate its business, caused by any lack of

23  access to any cash collateral, will result in a substantial diminution of Comerica's collateral, as customers'

24  orders will not be fulfilled and they will likely turn to competitors of the Debtor.  In contrast, maintenance of the

25  Debtor's ongoing operations will preserve the value of Comerica's interest in any cash collateral as nearly as

26  possible against any risk to that value, thus providing adequate protection.

27      7.      The Debtor employs approximately 39 employees in its operations.  The Debtor must have the

28  immediate use of any cash collateral to meet payroll obligations, to meet the daily costs and expenses of

1   operating their business, to promptly pay their vendors, and to acquire goods and services to keep their

2   business operating.  Any delay in the Debtor's ability to meet one or more of the aforementioned operating

3   needs could deprive the Debtor of its ability to successfully reorganize its financial affairs.

4         I declare under penalty of perjury under the laws of the United States of America that the foregoing is

5   true and correct.

6   Executed on this 21st Day of January 2011 at Hawthorne, California.

7

8

9                                                    Scott Blakely

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        17

# EXHIBIT A

**LNI Custom Manufacturing**
**Cash Forecast**

| | Fcst 1/22/2011 | Fcst 1/29/2011 | Fcst 2/5/2011 | Fcst 2/12/2011 | Fcst 2/19/2011 | Fcst 2/26/2011 | Fcst 3/5/2011 | Fcst 3/12/2011 | Fcst 3/19/2011 |
|---|---|---|---|---|---|---|---|---|---|
| **Receipts:** | | | | | | | | | |
| Total Receipts | $ 629,291 | $ 5,164 | $ 70,095 | $ - | $ 516,655 | $ - | $ 50,000 | $ 205,000 | $ 20,000 |
| | | | | | | | | | |
| **Expenditures:** | | | | | | | | | |
| Payroll | $ 35,000 | $ - | $ 42,500 | $ - | $ 35,000 | $ - | $ 42,500 | $ - | $ 35,000 |
| Payroll Taxes - Deductions | $ - | $ 12,000 | $ - | $ 12,000 | $ - | $ 12,000 | $ - | $ 12,000 | $ - |
| Commissions | $ 20,000 | $ - | $ 20,000 | $ - | $ 20,000 | $ - | $ 20,000 | $ - | $ 20,000 |
| | | | | | | | | | |
| **Automatic Payments** | | | | | | | | | |
| Comerica - Equipment | $ - | $ - | $ 6,750 | $ - | $ - | $ - | $ 6,750 | $ - | $ - |
| Ford Credit - F150 - '06 #1 | 479 | - | - | - | 479 | - | - | - | 479 |
| Ford Credit - F150 - '06 #2 | 453 | - | - | - | 453 | - | - | - | 453 |
| Ford Credit - F150 - '07 #3 | 586 | - | - | - | 586 | - | - | - | 586 |
| Ford Credit F350 - '06 | - | 617 | - | - | - | 617 | - | - | - |
| Intech - 004 - National | - | 1,964 | - | - | - | 1,964 | - | - | - |
| Intech - 005 | 2,966 | - | - | - | 2,966 | - | - | - | 2,966 |
| Toshiba Amer Business | - | - | 508 | - | - | - | 254 | - | - |
| US Bank | 1,322 | - | - | - | 1,322 | - | 1,322 | - | - |
| Wells Fargo Financial | - | - | - | 384 | - | - | - | 384 | - |
| Total Automatic Payments | $ 5,806 | $ 2,581 | $ 7,258 | $ 384 | $ 4,484 | $ 3,903 | $ 7,004 | $ 384 | $ 4,484 |
| | | | | | | | | | |
| **Payments on Credit Cards** | | | | | | | | | |
| American Express #1 - Scott | | $ 50,000 | $ - | $ 50,000 | $ - | $ 50,000 | $ - | $ 50,000 | $ - |
| American Express #2 Starwood | | 1,000 | - | 1,000 | - | 1,000 | - | 1,000 | - |
| Total Payments on Credit Cards | $ - | $ 51,000 | $ - | $ 51,000 | $ - | $ 51,000 | $ - | $ 51,000 | $ - |
| | | | | | | | | | |
| **Payments by Check** | | | | | | | | | |
| Insurance - CA Choice | $ - | $ - | $ - | $ - | $ 7,500 | $ - | $ - | $ - | $ 7,500 |
| Insurance - Everest W.Comp. | 10,301 | - | - | - | - | 10,301 | - | - | - |
| Insurance - Golden Eagle | - | - | - | - | - | - | - | - | - |
| AFCO - Insurance Premium | - | 1,507 | - | - | - | - | 1,507 | - | - |
| Loan Repay | - | - | - | - | - | - | - | - | - |
| Loan Repay - LOC | - | - | - | - | - | - | - | - | - |
| Rent | - | 15,938 | - | - | - | 15,938 | - | - | - |
| Utilities | | | 6,000 | | | | 6,000 | | |
| Contract Labor | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Accounting Services | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| EE Reimbursements | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Trade Vendors | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Legal/Outside Accounting | - | - | 2,000 | | - | - | 2,000 | - | - |
| Other | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| Total Payments by Check | $ 22,301 | $ 29,445 | $ 20,000 | $ 12,000 | $ 19,500 | $ 38,239 | $ 21,507 | $ 12,000 | $ 19,500 |
| | | | | | | | | | |
| **Material Projection for Ongoing Jobs** | | | | | | | | | |
| Artisan Court | $ - | $ - | $ 9,000 | $ - | $ - | $ - | $ - | $ - | $ - |
| Griffith - Harry Bridges | - | - | - | - | - | - | - | - | - |
| Shop Drawings | - | - | - | - | - | - | - | - | - |
| Mock Up | - | - | - | - | - | - | - | - | - |
| Excavation / rebar / footings | - | - | - | - | - | - | - | - | - |
| Structural Steel (material on site) 60% | - | - | - | - | - | - | - | - | - |
| Structural Steel (Install) 40% | - | - | - | - | - | - | - | - | - |
| Electrical / Lighting | - | - | - | - | - | - | - | - | - |
| Cladding | - | 175,500 | - | - | - | - | - | - | - |
| Archit Stainless Steel Mesh (matl) 75% | - | - | - | - | 258,780 | - | - | - | - |
| Archit Stainless Steel Mesh (Inst) 25% | - | - | - | - | - | - | 17,000 | - | - |
| Masonry | - | - | - | - | - | - | - | 24,000 | - |
| DeSilva Gates Construction | - | - | - | - | - | - | - | - | 13,000 |
| Disneyland Hotel | - | - | - | - | - | - | - | - | 20,000 |
| Hilbers Shelters | - | - | - | - | - | - | - | - | 1,000 |
| LACTMA - Redondo Beach | - | - | - | - | - | - | - | - | - |
| Lake Park Village | 1,000 | - | - | - | - | - | - | - | - |
| Boulder Highway | - | 15,000 | - | - | - | - | - | - | - |
| Boulder Highway Markers | - | 20,000 | - | - | - | 20,000 | - | - | 20,000 |
| Landscape Development | - | 3,000 | - | - | - | - | - | - | - |
| Rose Tarlow | - | - | - | - | - | - | - | - | - |
| Savattone | - | 3,000 | - | - | - | - | - | - | - |
| Senior Resource Assn - Vero Beach | - | - | - | - | - | - | - | - | - |
| Shelter Clean | - | - | - | - | - | - | - | - | - |
| Shelter Clean | - | - | - | - | - | - | - | - | - |
| Slatter Construction | - | 2,000 | - | - | - | - | - | - | - |
| Trimet Shelters | 20,000 | - | - | - | 20,000 | - | 20,000 | - | - |
| UPA | - | - | - | - | - | - | - | - | - |
| West Sacramento | - | 2,000 | - | - | - | - | - | - | - |
| Wichita Benches | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | - | - | - | - | - | - |
| Total Material Projection | $ 21,000 | $ 220,500 | $ 9,000 | $ - | $ 278,780 | $ 20,000 | $ 37,000 | $ 24,000 | $ 54,000 |
| | | | | | | | | | |
| **Total Expenditures** | $ 104,107 | $ 315,526 | $ 98,758 | $ 75,384 | $ 357,764 | $ 125,142 | $ 128,011 | $ 99,384 | $ 132,984 |
| | | | | | | | | | |
| **Net Cash Flow** | $ 525,184 | $ (310,362) | $ (28,663) | $ (75,384) | $ 158,891 | $ (125,142) | $ (78,011) | $ 105,616 | $ (112,984) |
| | | | | | | | | | |
| Beginning Cash Balance | 23,656 | 548,840 | 238,477 | 209,815 | 134,431 | 293,322 | 168,180 | 90,169 | 195,785 |
| Receipts | 629,291 | 5,164 | 70,095 | - | 516,655 | - | 50,000 | 205,000 | 20,000 |
| Payments | (104,107) | (315,526) | (98,758) | (75,384) | (357,764) | (125,142) | (128,011) | (99,384) | (132,984) |
| Ending Cash Balance | $ 548,840 | $ 238,477 | $ 209,815 | $ 134,431 | $ 293,322 | $ 168,180 | $ 90,169 | $ 195,785 | $ 82,801 |

<u>PROOF OF SERVICE</u>

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 506 Santa Monica Blvd. Ste. 200, Santa Monica, California 90401.  On January 21, 2011, I served the within document(s) described as:

**DEBTOR'S EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL**

on the interested parties in this action as stated on the attached mailing list.

☐   (BY MAIL) By placing true copies of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list.  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing contained in affidavit.

☐   (BY EXPRESS MAIL) By placing true copies of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list.  I placed each such envelope for collection and overnight mailing following ordinary business practices.  I am readily familiar with this firm's practice for collection and processing of Express Mail to be sent overnight by the U.S. Postal Service.  Under that practice, it would be deposited on that same day in the ordinary course of business, with Express Mail postage thereon fully prepaid, in a post office, mailbox, sub-post office, substation, mail chute, or other like facility regularly maintained by the U.S. Postal Service for receipt of Express Mail.

☒   (BY OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, true copies of the foregoing document(s) in a sealed envelope or package designated by the express service carrier, addressed as set forth on the attached mailing list, with fees for overnight delivery paid or provided for.

☐   (BY FAX) By transmitting a true copy of the foregoing document(s) via facsimile transmission from this firm's facsimile machine, to each interested party at the facsimile machine telephone number(s) set forth on the attached mailing list.  Said transmission(s) were completed on the aforesaid date at the time stated on the transmission record issued by this firm's sending facsimile machine.  Each such transmission was reported as complete and without error and a transmission report was properly issued by this firm's sending facsimile machine for each interested party served.  A true copy of each transmission report is attached to the office copy of this proof of service and will be provided upon request.

☐   (BY E-MAIL) By transmitting true copies of the foregoing document(s) to the e-mail addresses set forth on the attached mailing list.

I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 21, 2011, at Santa Monica, California.

| J'aime Williams | /s/ J'aime Williams |
|---|---|
| (Type or print name) | (Signature) |

SERVICE LIST

**BY ELECTRONIC NOTICE**
* Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com
* United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

**BY OVERNIGHT SERVICE**
Hon. Judge Alan Ahart
U.S. Bankruptcy Court
255 E. Temple Street
Los Angeles, CA 90012

Office of United States Trustee
725 South Figueroa Street, 26th
Floor
Los Angeles, CA  90017

LNI Custom Manufacturing Inc.
12536 Chadron Avenue
Hawthorne, CA 90250
**Debtor**

NAPS
910 Camino Del Mar Ste F
Del Mar, CA 92014-2800
**Secured Creditor**

Comerica Bank
2321 Rosecrans Ave Ste 1225
El Segundo, CA 90245-4977
**Secured Creditor**

Joe Green
Glas Pro
9401 Ann Street
Santa Fe Springs, CA 90670
**20 Largest Unsecured**

Cambridge Architectural
Attn: Kathy Jo O'Connell
105 Goodwill Rd
Cambridge, MD 21613-2980
**20 Largest Unsecured**

State Board of Equalization
Attn: Eva G. Agrams
Legal Dept, Appeals Division
(MIC:80)
450 N. Street,
PO Box 942879,
Sacramento, CA  94279
**20 Largest Unsecured**

Bus Stop, LLC
Attn: Julie Rothgeb
4239 Oakwood Ave
La Canada, CA 91011-3408
**20 Largest Unsecured**

Theresa Roth
18109 Coastline Drive
Malibu, CA 90265
**20 Largest Unsecured**

Sunelco, Inc.
Beth C. Linkenhoker
2086 US Highway 93 N, Ste 130

Victor, MT 59840-9209
**20 Largest Unsecured**

William Chica
5443 West 119th St
Inglewood, CA  90304
**20 Largest Unsecured**

Power-Sonic Corporation
Attn: Tania Estrada
7550 Panasonic Way
San Diego, CA 91154-8207
**20 Largest Unsecured**

Vinson & Elkins LLP
c/o David R. Johnson
The Willard Office Building
1455 Pennsylvania Avenue, NW
Washington, DC 20004
**20 Largest Unsecured**

Joseph T. Ryerson & Son
PO Box 601086
Los Angeles, CA   90060-1086
**20 Largest Unsecured**

Ramda Metal Specialties
Attn: Daniel Guevara
13012 Crenshaw Blvd.
Gardena, CA 90249-1544
**20 Largest Unsecured**

Tivoli Lighting
Attn: Francisco Amezcua
15602 Mosher Ave
Tustin, CA 92780-6427
**20 Largest Unsecured**

West Coast Steel & Tube
Attn: Fred Jasso
PO Box 79630
City of Industry, CA 91716-9630
**20 Largest Unsecured**

SABIC Innovative Plastics Holding
Attn: Jeffrey E. Hebert
1 Plastics Ave
Pittsfield, MA 01201-3662
**20 Largest Unsecured**

Shell Oil Company
PO Box 9016
Des Moines, IA 50368-9016
**20 Largest Unsecured**

Coast Aluminum & Architectural
Attn: Laura Strickling
Department 2940
Los Angeles, CA   90084-2940
**20 Largest Unsecured**

Cardinal Industrial Finishes
PO Box 9296
El Monte, CA 91733-0965
**20 Largest Unsecured**

West Coast Flat Bed, Inc.
Jeff Ellis
42455 5Th St E
Lancaster, CA 93535-5163
**20 Largest Unsecured**

Anvil Steel Corporation
Attn: Paul Schifino
137 West 168Th St
Gardena, CA 90248-2728
**20 Largest Unsecured**

19