Kenneth N. Russak (State Bar No. 107283)
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California 90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Comerica Bank

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In re | CASE No. 2:11-BK-12416 |
|---|---|
| LNI CUSTOM MANUFACTURING, INC., | Adv No.<br>Chapter 11 |
| Debtors. | **PRELIMINARY OPPOSITION OF COMERICA BANK TO DEBTOR'S MOTION TO USE CASH COLLATERAL**<br><br>Date:    JANUARY 28, 2011<br>Time:   2:00 P.M.<br>Crtrm:  1375 |

Comerica Bank ("Comerica") objects to and opposes the "Debtor's Emergency Motion to Approve Use of Cash Collateral" ("Motion"). This "Preliminary" opposition ("Opposition") is filed on an emergency basis, out of an abundance of caution. Comerica reserves the right to supplement this Opposition at the time and in the manner this Court might otherwise set if this Court should grant the motion on an interim basis and set a final hearing.

I. **INTRODUCTION**

The Debtor's Motion proposes to convert to cash and spend virtually all of Comerica's collateral during the first nine or ten weeks of the case. The Debtor initially proposed a budget for weeks one through nine of the case, that would have consumed $1,437,060.00 of Comerica's collateral. The revised budget entirely omits week one, and instead forecasts spending $1,164,237.00 in weeks two through ten of the case. Those funds will be the obtained from

Petition Date Cash, Petition Date Inventory and Petition Date contracts, all of which constitute Comerica's Collateral. If the Debtor had provided the Court with a report of changes in its balance sheet over the same periods, it would show, in essence, the shrinkage of the Debtor's balance sheet by the exact amount of the expenditures. At the end of each period, respectively, Comerica's collateral will have entirely consumed, and the Debtor will have on hand less than $200,000 in cash. At the present time, it has no other binding contracts that it might be able to assume over the objection of the non-debtor parties to those contracts. It has no provable source of income to replace the collateral it proposes to consume in its "stay alive at any cost" strategy. It's only hope for income are municipal contracts with entities that do not yet know that it is a debtor in a bankruptcy case.

The Debtor's strategy is to burn through Comerica's collateral on the hope that it will get new contracts; but the Debtor's principal source of business is contracts from cities and governmental agencies that, as a matter of state law and local ordinance, generally are required to vet the financial strength of the contractors and subcontractors working on government contracts. There is no evidence that those entities (or its non-governmental entities) will continue to do business with a Debtor in a bankruptcy case. Given the political realities confronting cash-strapped municipalities, common sense dictates extreme caution.

Simply put, the Debtor's strategy puts all the risk of failure on Comerica Bank, and the risks are very high indeed, given the nature of its business. The Debtor's offer of adequate protection is illusory. The Motion must be denied.

## II. THE DEBTOR HAS NOT MET ITS BURDEN OF PROOF ON ADEQUATE PROTECTION.

The Debtor's Motion is based on only the thinnest of evidence, assuming for sake of argument that its proffered testimony is at all admissible. (It isn't.) The original Declaration of Scott Blakely ("First Blakely Declaration") is barely one page long. Indeed, Mr. Blakely's substantive testimony in that declaration is only about 20 lines of text. His substantive testimony begins on line nine (page 16 of the Motion) and ends on line three of the second page of his declaration (page 17 of the Motion); and, as set forth more fully below, even that testimony is inadmissible.

His "Supplemental Declaration" adds only two paragraphs of additional information: hearsay testimony about contracts he hopes to enter into with the cities of El Monte and Elk Grove and, as a subcontractor, indirectly with the City of Los Angeles. No documents are attached to either declaration to prove the existence of those contracts, with the possible exception of a "Request to Negotiation" for the City of Los Angeles opportunity. Mr. Blakely testifies that all necessary approvals are in place for the El Monte and Elk Grove contracts. but neither city has been advised that the Debtor filed bankruptcy and, as set forth more fully in the Declaration of Kenneth N. Russak in Opposition to Debtor's Emergency Motion to Use Cash Collateral" ("Russak Dec."), the only evidence on the website for the City of Elk Grove of approval of a contract between the city and the Debtor is a 2007 contract for 16 bus shelters. (Hardly the sort of "recurring" job testified to by Mr. Blakely.)

The Request to Negotiation for the Los Angeles work specifically references compliance with Los Angeles' Contractor Responsibility Ordinance No. 173677, [Article 14, Chapter 1, Division 10, L.A.C.C.]. That ordinance and the compliance documents associated with that ordinance require proof of financial responsibility. Among other things, the "Responsibility Questionnaire" which the City uses to comply with the Ordinance includes the following section:

> D. FINANCIAL RESOURCES AND RESPONSIBILITY
>
> 5. In the past five years, has your firm ever been denied bonding?
>    ☐ Yes    ☐ No
>
>    If Yes, explain on Attachment B the circumstances surrounding each instance.
>
> 6. Is your firm now, or has it ever been at any time in the last five years, the debtor in a bankruptcy case?
>    ☐ Yes    ☐ No
>
>    If Yes, explain on Attachment B the circumstances surrounding each instance.
>
> 7. Is your firm in the process of, or in negotiations toward, being sold?
>    ☐ Yes    ☐ No
>
>    If Yes, explain the circumstances on Attachment B.

Russak Dec. Ex. 5.

The debtor correctly notes that it bears the burden of proof on the question of adequate

1  protection. *Motion*, 8:7-12;[1] but entirely fails to submit any admissible evidence upon which this
2  Court could make a finding of adequate protection. When the Debtor's proffered testimony—
3  whether or not admissible—is weighed against the evidence that Comerica submits, the Debtor's
4  failure to meet its burden is undeniable.
5       Comerica has a property interest in its cash collateral that is entitled to the due process
6  protections of the Fifth Amendment to the United States Constitution. That is at the heart of
7  adequate protection.[2] A motion that threatens Comerica's property interests in its cash—and
8  other—collateral must be based on at least minimally sufficient, competent evidence in order to
9  satisfy due process. Mr. Blakely's testimony regarding the supposed reasonableness of the
10 proposed cash collateral budget and of the supposed protections afforded to Comerica amounts to
11 nothing more than a "because I say so" declaration. That simply isn't good enough, as a matter of
12 the Federal Rules of Evidence, not to mention the substance of his inadmissible testimony. Mr.
13 Even if minimally admissible, Mr. Blakely's testimony would be insufficient to support a finding
14 that the budget is reasonable, much less that Comerica will be protected adequately. On the

---

[1] The Debtor has admitted that Comerica holds revolving line of credit and term loan claims totaling approximately $1.4 Million that "are secured by the Debtor's Assets." *Motion*, 4:6-11. Therefore, Comerica's burden of proof under 11 U.S.C. § 363(o) on the question of the validity, priority and extent of its lien has been met by admission, for purposes of this motion. Granted, the Debtor has reserved the purported right to challenge same, *Motion*, 5:9-11, but, at the present time, the Debtor's admissions about Comerica's claims and liens stand unchallenged.

[2] "The concept [of adequate protection] is derived from the fifth amendment protection of property interests. *See Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, [85 L. Ed. 184, 61 S. Ct. 196] (1940); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, [79 L. Ed. 1593, 55 S. Ct. 854] (1935). It is not intended to be confined strictly to the constitutional protection required, however. The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain [**50] may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for."H.R. Rep. No. 595, 95th Cong., 2d Sess. 356-57, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6312

Main Document    Page 5 of 10

1   contrary, even if the projections were admissible, they prove exactly the opposite. During the 60

2   day cash use period, the projections forecast the consumption of virtually all of the inventory and

3   accounts receivable which presently stand as collateral for Comerica's claims, without any

4   assurance that replacement inventory or accounts receivable will be generated by the Debtor's

5   operations in *any* amount, much less in an amount sufficient to maintain the status quo.

6       A.   **The Adequate Protection Argument is Based Upon the False Premise that**

7             **Post-Petition Cash is Not Cash Collateral.**

8       The Debtor argues that "Comerica's interest in any cash collateral will be adequately

9   protected from a diminution in value through replacement liens granted to Comerica and through

10  the maintenance and preservation of the Debtor's business." *Motion*, 10:13-15. This argument

11  holds no water for two separate reasons. First, it is based upon the false proposition that the only

12  interest entitled to protection is Comerica's interest in the cash on hand on the petition date. As the

13  Debtor admits, however, Comerica has a lien on all of the Debtor's assets; and those assets include

14  inventory and accounts receivable, which the Debtor asserts have petition date values of $206,000

15  and $1,241,000, respectively, not to mention the Debtor's contract rights. *See* definition of

16  "Collateral"[3] and "General Intangibles"[4] set forth in the Loan and Security Agreement, which is

17  

---

18  [3] Collateral is defined as follows: "'Collateral' shall mean and includes all personal
19  property of Borrower, including without limitation each and all of the following: the Accounts; the Inventory; the General Intangibles; the Negotiable Collateral; Borrower's Books; all Borrower's
20  deposit accounts; all Borrower's investment property (including without limitation securities and securities entitlements); all goods, instruments, documents, policies and certificates of insurance,
21  deposits, money or other personal property of Borrower. In which Bank receives a security
22  interest and which now or later come into the possession, custody or control of Bank; all Borrower's equipment and fixtures; all additions, accessions, attachments, parts, replacements,
23  substitutions, renewals, interest, dividends, distributions or rights of any kind for or with respect to any of the foregoing (including without limitations any stock splits, stock nights, voting rights and
24  preferential rights); any supporting obligations for any of the foregoing; and the products and
25  proceeds of any of the foregoing, including, but not limited to, proceeds of insurance covering the Collateral, and any and all Accounts, General Intangibles, Negotiable Collateral, Inventory,
26  equipment, money, deposit accounts, investment property, equipment fixtures of other tangible and intangible property of Borrower resulting from the sale of other disposition of the Collateral
27  and the proceeds thereof and any supporting obligations or security therefore and any right to payment there under, and including, without limitation, cash or other property which were
28      (footnote continued)

appended to Comerica's proof of claim filed on January 26, 2011, claim no. 2-1, at pp. 21-22. Comerica's liens extend to the proceeds of all of its collateral, including the proceeds of accounts receivable, contract rights and inventory. Post-petition proceeds of pre-petition collateral remains subject to Comerica's security interest. 11 U.S.C. § 552(b).[5]

The Debtor forecasts no investments of fresh debt or equity capital. The Debtor's budget does not appear to forecast any revenues from new contracts it expects to enter into as a debtor in possession. Thus, the only source of operating funds for the Debtor's post-petition operations for the forecasted period will be the proceeds of pre-petition collateral. During the first nine weeks of the case, the Debtor forecasts spending approximately $1,500,000 of collateral proceeds to finance its operations; and yet it asserts that Comerica is entitled to protection of only the $173,000 in petition date cash. Obviously, that assertion is incorrect. Comerica is entitled to protection of all of its cash collateral, whether generated before or after the petition date.

1. **Even the Debtor's Limited Offer of Adequate Protection may be Illusory, Because of the Debtor's Pre-Petition Misconduct**

The limited offer of adequate protection raises another important issue. Section 6.22 of the loan agreement provides that "Borrower shall keep all of its principal bank accounts with Bank

---

proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Borrower. Notwithstanding anything to the contrary contained herein. Collateral shall not include any waste or other materials which have been or may be designated toxic or hazardous by Bank."

[4] The definition of general intangibles is: "'General Intangibles' shall mean and includes all of Borrower's present and future general intangibles and other personal property (including without limitation all payment intangibles, electronic chattel paper, contract rights, rights arising under common law, statutes, or regulations, ____ or things in action, goodwill, patents, trade names, trademarks, service marks, copyrights, blueprints, drawings, plans, diagrams, schematics, purchase orders, customer lists, monies due or recoverable from pension funds, route lists, rights to payment (including without limitation, rights to payment evidenced by chattel paper, documents or instruments) and other rights under any royalty or licensing agreements, infringement claims, software (including without limitation any computer program that is embedded in goods that consist solely of the medium in which the program is embedded), information contained on computer disks or tapes, literature, reports, catalogs, insurance premium rebates, tax refunds, and tax refund claims), other than goods, Accounts, Inventory, Negotiable Collateral, and Borrowers Books."

[5] The definition of Collateral includes "proceeds." *See id.*

798426.1 | 042500-0246                                   6

1  and shall notify Bank immediately in writing of the existence of any other bank account, deposit
2  account, or any other account into which money can be deposited." *See* Declaration of Natali
3  Amir in Opposition to Debtor's Emergency Motion to Use Cash Collateral at Exhibit 1, Section
4  6.22 (docketed page number 21 of 31 in the main part of the electronically filed document).  The
5  Borrower breached this obligation in October of 2010 by moving its principal bank account to
6  Citizens Business Bank, by failing to notify Comerica of that fact and—after Comerica discovered
7  the breach in an audit it conducted in November and demanded that it be cured—by failing to cure
8  the breach.  This is significant for two reasons.  First, although Comerica hasn't completed its
9  analysis or investigation of the circumstances and therefore reserves its rights and arguments in
10 this regard, it is at least possible that Comerica's lien on that cash will be trumped by Section 544
11 of the Code, rendering even the Debtor's limited offer of protection illusory, inasmuch as the
12 adequate protection offered extends only to "duly perfected and unavoidable liens in cash
13 collateral held by Comerica as of the Petition Date." *Motion*, 5:3-8.  Perhaps more importantly,
14 the Debtor's refusal to comply with its contractual obligations calls into serious question whether it
15 can be trusted to manage cash collateral properly as an estate fiduciary.  The conscious and
16 adamant breach of the account maintenance covenant indicates strategic planning designed to
17 defeat Comerica's legitimate rights.  Inasmuch as the concept of "adequate protection" in this
18 context at least in part relies on the assumption that the debtor in possession will comply with its
19 obligations under the Code and under this Court's orders, the Debtor's pre-petition misconduct is
20 an indication of enhanced risk.  The Debtor's "ask for forgiveness not permission" approach just
21 doesn't cut it in a chapter 11 case.

22     **2.**     **The Debtor's Offer of a Replacement Lien on Property that Already is**
23         **Pledged to Comerica Adds Nothing to the Protections that Comerica**
24         **Negotiated for Itself, When it Made the Loans.**

25     In any event, granting Comerica a "replacement" lien on the Debtor's post-petition cash,
26 accounts receivable and inventory is illusory; because Comerica already has a lien on post-petition
27 cash, accounts receivable and inventory (not to mention contract rights), together with an express
28 lien on the proceeds thereof.  The Debtor has made absolutely no showing to support a conclusion

798426.1 | 042500-0246          7

that any post-petition cash, accounts receivable or inventory will be anything other than proceeds of Comerica's pre-petition collateral and, as such, Comerica's collateral. Granting a replacement lien on that which already stands as collateral for Comerica's claims is illusory protection.

**B.     The Debtor Does Not Even Attempt to Submit Evidence of Changes in its Balance Sheet Resulting from the Proposed Use of Cash.**

    **1.     All the Debtor has Proven, if Anything, is that Comerica's Collateral will decline in value by $1,491,400 during the first 60 days of the case.**

The Debtor does not even attempt to submit evidence that might show changes in the value of the inventory and accounts receivable between the petition date and the end of the cash use period. The Debtor does not submit a petition date balance sheet, much less a forecasted balance sheet at any point during or at the end of the proposed cash use period. The Debtor does not submit any records listing its petition date assets, much less any evidence of the value of those assets. The only mention of the value of the Debtor's petition date assets is in the written argument submitted by the Debtor's counsel; but argument, of course, does not constitute evidence.

Thus, the only testimony before this Court on the question of adequate protection is the Debtor's proposal to spend $1,491,400 of Comerica's Cash Collateral during the first two months of the case. There is absolutely no testimony that that huge cash flow out will be replaced by new inventory, contracts or accounts receivable. The testimony before this Court can support no conclusion other than a conclusion of loss. In other words, the Debtor's own evidence—to the extent it is admissible at all—shows that value of Comerica's collateral will decline by $1,491,400 during the first 60 days of this case! Not only does the Debtor's evidence fail to support a finding of adequate protection, it affirmatively proves that Comerica would not be not adequately protected if this Court were to permit the cash use requested by the Debtor.

**C.     Mr. Blakely's Original Declaration Testimony is Inadmissible.**

The foregoing discussion of the evidence presupposes the admissibility of the evidence proffered by the Debtor. In point of fact, the evidence isn't at all admissible. The 20 lines of substantive testimony in Mr. Blakely's declaration set forth nothing more than opinion testimony,

798426.1 | 042500-0246                                        8

with the possible exception of Paragraph 3, wherein Mr. Blakely simply identifies the proposed budget. Paragraph 4 states an opinion, supposedly reflected in the Budget, that the Debtor will operate on a cash flow positive basis during the budgeted period and that its assets will increase in value during that period. (In point of fact in indicates neither.) Paragraph 5 sets forth opinions about the supposed reasonableness of the projections and their supposed concordance with historical experience. Paragraph 6 states an opinion about the effect on Comerica's collateral that supposedly would result from even a temporary cessation of the Debtor's ability to operate its business. And, with the exception of the assertion that the Debtor employs "approximately" 39 employees in its operations, is entirely conclusory in form and substance.

There is not even an attempt to lay the foundation necessary for Mr. Blakely to offer these opinions. Mr. Blakely testifies that he is the president of the Debtor, but that is all. He says nothing about his experience or training that might qualify him to offer expert testimony; nor does he state the factual basis upon which his apparently lay opinions are based. The Debtor admits that Mr. Blakely does not maintain the Debtor's books and records. That task is handled by Geoff Wallings. *Motion*, 3:11. Mr. Blakely attaches to his declaration a one-page budget, but he doesn't identify the person who prepared it, much less attach copies of the historical performance reports upon which, supposedly, it is based.

This sort of testimony doesn't pass even the threshold test for admissibility of either a lay or expert opinion. A lay opinion is admissible only if it is based upon the witness' own perceptions. *Cf.* Rule 701 of the Federal Rules of Evidence ("FRE") (lay opinions are admissible only if they are "rationally based on the perception of the witness") with FRE 702 ("The facts or data . . . upon which an expert bases an opinion . . . may be those perceived by **or** made known to" the expert. . .). Evidence Rule 705 requires that a lay witness must testify to the perceptual foundation upon which his opinion is based before the opinion is offered. Only an expert is permitted to opine first and explain later, if asked, but Mr. Blakely offers no testimony that might qualify him as an expert.

Mr. Blakely does not testify about the manner of preparation of the proposed budget. He does not state whether he or someone else prepared the budget and, if so, what documents were

reviewed and relied upon by the preparer. He offers the conclusory and ambiguous opinion that the proposed budget is "essentially" [whatever that means] "in accordance with" [whatever that means] "the Debtor's historical experience," but he does not provide copies of the historical performance records upon which he (or some other Debtor representative) bases the "essentially in accordance" conclusion. This violates FRE 1002, the so-called best evidence rule, as well as, potentially, FRE 106, the provision which requires a complete disclosure of a partially disclosed writing, upon demand.

### D. The Budget Appears to Include Improper Items

It appears that the Budget contemplates paying pre-petition claims of employees and vendors. There is no specification of same in any of the moving papers, much less an attempt to justify or obtain approval for same. It is, at best, a "stealth" critical vendors motion.

### III. CONCLUSION

This is one of those unfortunate cases where the prospects for reorganization are so slim and the risks to the secured creditor are so high that there is no justification to approve the use of cash collateral for any purpose, for any period of time. The Debtor has not and cannot offer adequate protection. To permit Comerica's collateral to be consumed in the Debtor's gamble to get new contracts would violate Comerica's property rights under the Fifth Amendment of the United States Constitution. The Motion should be denied.

DATED: January 28, 2011                FRANDZEL ROBINS BLOOM & CSATO, L.C.


                                       By: /S/ Kenneth N. Russak
                                           KENNETH N. RUSSAK
                                           Attorneys for Comerica Bank