1   **LAW OFFICES OF STEVEN R. FOX**
    Steven R. Fox, SBN 138808
2   17835 Ventura Blvd., Suite 306
    Encino, CA 91316
3   (818)774-3545; FAX (818)774-3707

4

5   Attorneys for Debtor-in-Possession

6

7

8                 UNITED STATES BANKRUPTCY COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                    LOS ANGELES DIVISION

11  In re                          ) CASE NO: 2:11- 12416 AA
                                   ) CHAPTER 11
12                                 )
                                   ) SUPPLEMENTAL  MOTION  FOR
13  LNI Custom Manufacturing, Inc., ) AUTHORITY  TO  USE  CASH
                                   ) COLLATERAL  AND  REQUEST  THAT
14                                 ) MOTION BE HEARD ON SHORTENED
                                   ) NOTICE OR ON AN EMERGENCY
15         Debtor.                 ) BASIS; MEMORANDUM OF POINTS
                                   ) AND AUTHORITIES; DECLARATIONS IN
16                                 ) SUPPORT
                                   )
17                                 ) Date  :
                                   ) Time  :
18                                 ) Place :
                                   )
19  _____) Petition filed January 19, 2011

20      TO THE HONORABLE ALAN AHART, U.S. BANKRUPTCY JUDGE:

21      COMES NOW the Debtor and Debtor-in-Possession with its Supplemental

22  Motion.

23  1.    The Debtor designs, manufactures, sells and installs custom sign and shelter

24        solutions for transit systems and municipalities nationwide. The Debtor's clients

25        include the Los Angeles County MTA, the Port of Los Angeles and Kansas City

26        Area Transportation.  The Debtor is one of the country's more prominent bus

27        shelter manufacturers.  The Debtor is presently expecting to receive several

28        significant new contracts for bus shelter manufacturing and installation.

                                    - 1 -

2.    The Court has previously granted the use of cash collateral (docket numbers 39 and 54) pursuant to the budgets the Debtor has proposed.  In connection with these prior requests, the Debtor has met its burden of proof. The current grant of authority to use cash collateral expires on March 11, 2011.  The Debtor has determined that changing counsel at this time is unfortunate but necessary for the reorganization to go forward.  At about the time the Debtor changed counsel, it became aware that a new motion seeking authority to use cash collateral needed to be prepared and filed.

3.    The Debtor seeks authority to use cash collateral pursuant to the attached budget from March 11, 2011 through the end of April, 2011.  During this time, the Bank's position will not deteriorate and in fact will improve:

• LNI forecasts it will maintain a healthy cash balance of $225,000 as of the end of April, 2011, as compared to the Debtor's starting balance in this case of $66,000;

• LNI will continue working on existing jobs. This will create collectibility over time of over $680,000 in receivables (the Griffith and Bridges jobs), jobs which are not currently collectible as the Debtor's responsibilities have not been completed;

• The Debtor is continuing to bid on jobs and has strong prospects for receiving the contracts for several large jobs.  These jobs include municipal jobs to manufacture bus shelters and bus benches;

• The Bank is also adequately protected by the equity in the Debtor's principal's home in which the Bank apparently took a security interest; and

• The Bank is also adequately protected by its interest in the Debtor's other assets.

• LNI seeks to pay $10,000 to the Bank with each payment due the last business day of March and April.  The payments are to be directed to the credit of the equipment loan.

1  4.    The Debtor brings this Motion and an emergency basis and seeks a hearing

2        prior to March 11, 2011.

3  5.    This Motion is being served on the secured creditor and the 20 largest

4        unsecured creditors.  The Debtor is requesting this Motion be heard prior to

5        March 11th and will provide notice of the hearing date to these parties.

6        **WHEREFORE** the Debtor prays the Court enter an order affording to the

7  Debtor the following relief:

8  1.    Authorize the Debtor to use cash collateral pursuant to the attached budget

9        though April, 2011;

10  2.    Authorize the Debtor to make the adequate protection payment set forth

11        above.

12  3.    Such further relief as may be appropriate, just and consistent with this Motion.

13  Dated: March 7, 2011                    LAW OFFICES OF STEVEN R. FOX

14

15

16                                         Steven R. Fox, proposed counsel for LNI
17                                         Custom  Manufacturing,  Inc.,  Debtor-in-
                                           Possession

18

19

20

21

22

23

24

25

26

27

28

1

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION

2

3       This case was commenced on January 19, 2011, by the filing of a voluntary

4   petition for relief under Chapter 11 of the Bankruptcy Code.  Since then, the Debtor

5   has been, and continues to be, a Debtor-in-Possession.  No examiner or trustee has

6   been appointed and no official committee of creditors has been established.

7                                          I.

8                               Statement of Facts.

9       The Debtor was established in 1995.  LNI designs, manufactures, sells and

10   installs custom sign and shelter solutions for transit systems and municipalities

11   nationwide. The Debtor's clients include the Los Angeles County MTA, the Port of Los

12   Angeles, and Kansas City Area Transportation.

13       Scott Blakely ("Blakely") is the Debtor's president and 100% share holder and

14   oversees the day to day operations of the Debtor. Geoff Wallings maintains the

15   Debtor's books and records.   In the past few days, the Debtor has brought in

16   additional management including the Patrick Rettig Corporation to act as its C.F.O.

17       LNI operates its business operation from a 15,000 square foot facility in

18   Hawthorne, California. LNI leases the facility from Bus Stop LLC, an entity controlled

19   by Blakely's mother.  No lease payments have been paid post-petition to Bus Stop

20   LLC.  The Debtor currently employs approximately 39 employees on an as needed

21   basis.

22       Prepetition, LNI had operated a manufacturing facility in Mexico to supplement

23   its production.  LNI ceased operations in Mexico in 2010.

24                                          II.

25                          Local Bankruptcy Rule 4001-2(c).

26       LBR 4001-2 sets forth various provisions which, if they are sought, must be

27   identified: There are no such provisions.

28

### III.

### The Debtor's Financial Status.

The budget for the next 7 weeks (through April 30, 2011) is attached here as Exhibit "A." During this time period, LNI expects receipts of over $600,000.00.  LNI will be working on two jobs (Bridges and Griffith) which will create some $680,000 in receivables after the next interim period concludes.  The projection does not include adequate protection payments and the U.S. Trustee's quarterly fee (due April 30, 2011) to be paid from monies on hand.

Use of Cash Collateral Through the Current Period.  The Debtor has not lost money thus far in the chapter 11 case.  Though the Debtor's receipts thus far are less than LNI projected, LNI kept its expenses even lower.  As a result, the Debtor's cash position improved.  Attached here as Exhibit "B," and incorporated here by reference is a copy of an actual-to-budget comparison of receipts, expenses and cash flow with cash balances. [1] (The new forecast (Exhibit "A") contains category descriptions which do not match the category descriptions found in the comparison (Exhibit "B").  This is because the category descriptions used in the comparison track those descriptions from the initial budget.  Those description titles were not useful.)

The Debtor has worked to build up future receivables by continuing to work on jobs.  Should LNI not complete work on a job, it would have great difficulty being paid.  A copy of the Debtor's receivables list as of March 4, 2011, is attached here as Exhibit "C," and incorporated here by reference.  (The Debtor will post on March 7, 2011, receipt of $82,425 for the Las Vegas Paving job.  Also, the Debtor believes the RTC of Southern Nevada receivable will not be paid.)

---

[1]     The Debtor cannot provide at the beginning of March an accrual based Profit and Loss statement because month closing journal entries need to be entered reconciling certain accounts such as inventory and work in progress.  The Debtor is still waiting for final February invoices.

1    The Debtor has kept its payables low. Attached here as **Exhibit "D,"** is a copy

2  of the Debtor's payables list as of March 4, 2011.

3    The Debtor's profit and loss statement for the post-petition period in January,

4  2011, is attached here as **Exhibit "E,"** and incorporated here by reference.

5    The Debtor's balance sheet as of January 31, 2011, is attached here as **Exhibit**

6  **"F,"** and incorporated here by reference.  The balance sheet reflects a substantial

7  asset base.

8    The Debtor maintains a list of jobs it has bid on and categorizes the jobs into

9  three categories: Those with a 90% chance of being awarded to the Debtor; Those

10  with a 50% chance of being awarded to LNI; and those with a 10% chance of being

11  awarded to LNI.  **Exhibit "G"** is a listing of these bids and analysis by Mr. Blakely as

12  to the likelihood LNI will be awarded these jobs.  The names of the jobs have been

13  coded to protect LNI which can provide an un-coded listing to the Bank with an

14  agreement concerning confidentiality.

15    The Bank is owed approximately $1,300,000. The Debtor's present asset base

16  includes the following:   [2]

17  | Monies in the Bank: | $409,985 |
18  | Receivables: | $1,054,408 |
19  | Inventory: | $220,000 (plus an additional $30,000
20  | | in raw materials to be placed into
21  | | inventory) |
22  | Machinery and Equipment: | $1,092,699 (book value)  The Debtor
23  | | recently received a written offer for the
24  | | fixed assets for $750,000.  [3]

25

26    [2]    This asset listing does not include the security interest in Blakely's home.

27    [3]    The Bank's UCC 1 indicates LNI granted an interest in all personal

28  property.  Though M&E is not specifically listed in the UCC1, LNI

# IV.

## Request for Authority to Use Cash Collateral.

The Debtor seeks authority to use cash collateral in the ordinary course of business. The Debtor seeks authority to use cash collateral through the period ending April 30, 2011. The Debtor will file a supplemental motion in early April for further use of cash collateral.    The Debtor needs cash collateral to remain in business. Without cash collateral, the Debtor will be unable to continue and complete work in progress. If LNI does not complete work, contractors and property owners will be loathe to pay receivables. The Debtor has payroll and payroll taxes to pay as well as other expenses of operating the business. Subcontractors will need to be paid for work being done. If they are not paid, the Debtor's ability to collect receivables may be imperiled. For the present, LNI assumes the Bank's security interest is properly perfected and enforceable.

Variance. LNI has done its best to make accurate projections concerning income and expenses. However, budgeting is not an exact science, especially in light of negotiations with purchasers. Given this, LNI requests it be permitted to vary from the proposed budget by as much as 20% in any one category. If LNI determines it needs to vary from any one budgeted item by more than 20%, LNI proposes it provide written notice by email or telecopier of the variance to the Bank. If the Bank does not object to the proposed variance within 48 business hours, then the variance will be deemed approved. If the Bank objects, then LNI will seek to set a hearing on shortened notice to obtain approval from the Court.

Rolling Unspent Budgeted Monies Forward. The budget is a weekly budget. As has already happened in this case, LNI has underspent in certain categories in some weeks. The Debtor requests it be authorized to carry over from pervious weeks any unused monies to be used in the same categories in future weeks. The

assumes for now the Bank intended to take a security interest in M&E.

1    Debtor also requests that the monies carried forward not count toward the

2    variance.  Rollover is important as LNI projects expenses on a weekly basis but

3    expenses may be deferred for various reasons.

4           Applying Overage to Costs of Goods Sold.  In the event LNI's collections

5    exceed projections, this means its orders are higher than projected.  If the Debtor

6    is bound by the budget, it may not be able to fulfill orders or it will need to delay

7    or turn away work.  To deal with this problem, the Debtor proposes that to the

8    extent monies exceed projected collections, the Debtor be authorized to apply up

9    to 75% of the overage to costs of goods sold.  This would mean the Debtor would

10   be putting monies into doing jobs and creating receivables.

11          The Bank's Interest Is Adequately Protected.  The Bank is afforded adequate

12   protection of its claims as (1) The value of the assets exceeds the Bank's claim, (2)

13   the Debtor is offering to make adequate protection payments with the payments to

14   be credited to the equipment loan, (3) the assets are insured, (4) the Debtor will

15   provide regular financial reports to the Bank and (5) the Bank should be provided

16   a replacement lien in the Debtor's assets to the extent the Bank's lien attached to

17   property of the Debtor prepetition and with the same validity, priority, and

18   description of collateral.

19          The Debtor's burden is to show the Bank's interest is adequately protected.

20   As Judge Markell has held, the reason for making adequate protection payments

21   is not to protect a secured creditor at the moment; it is

22          to ensure that the secured creditor ultimately receive[] what it would have
           received had not bankruptcy intervened.  "'Although stripped of the right to
23         immediate possession of its property, the creditor receives assurances that
           the value it could have received through foreclosure will not decline.' " In re
24         ProAlert, 314 B.R. at 441-42 (quoting 3 James F. Queenan,*327 Jr. et. al,
           Chapter 11 Theory and Practice § 16.03 (1994)).
25
     In re Las Vegas Monorail Co., 429 B.R. 317, 326-327 (Bankr. D.Nev. 2010)
26
            Waivers and Cash Collateral Stipulation Form 4001-2; Notice.  There is no
27
     stipulation to use cash collateral.  There are no provisions here also referenced in
28

1  Official Form 4001-2.  The Debtor is not here waiving any right to dispute a lien's

2  validity, (2) to challenge the extent of a security interest, (3) to invalidate a security

3  interest, (4) to surcharge collateral or (5) to bring a claim against the Bank.

4      <u>Service</u>.  The Motion has been electronically served on the Bank and the 20

5  largest unsecured creditors.

6                                    V.

7      **Request the Motion be Heard Prior to March 11, 2011.**

8      The Debtor's authority to use cash collateral expires on March 11, 2011.

9  No supplemental cash collateral motion was filed on the Debtor's behalf prior to

10  this Motion.  The Debtor is an operating business which needs monies to keep

11  operating.  The Debtor will need to cease its business operation at the close of

12  business on March 11th without a further grant of authority from this Court.  The

13  Debtor will upload an order shortening time.

14                                    VI.

15                               Conclusion

16      **WHEREFORE** the Debtor prays the Court enter an order affording to the

17  Debtor the following relief:

18  1.    Authorize the Debtor to use cash collateral pursuant to the attached budget

19          though April, 2011;

20  2.    Authorize the Debtor to make the adequate protection payment set forth

21          above.

22  3.    Such further relief as may be appropriate, just and consistent with this

23          Motion.

24  Dated: March 6, 2011              LAW OFFICES OF STEVEN R. FOX

25

26                                    _____
                                      Steven R. Fox, proposed counsel for LNI
27                                    Custom Manufacturing, Inc., Debtor-in-
                                      Possession

28

## DECLARATION OF SCOTT BLAKELY

I, Scott Blakely, declare as follows:

1.    I am over the age of 18.  I am the president of LNI Custom Manufacturing Inc. (the "Debtor" or "LNI"), the chapter 11 debtor-in-possession.  Unless otherwise stated, I have personal knowledge or information of the facts set forth herein and, if called as a witness, could and would testify competently thereto.  This declaration is offered in connection with the Debtor's SUPPLEMENTAL MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST THAT MOTION BE HEARD ON SHORTENED NOTICE OR ON AN EMERGENCY BASIS ("Motion").

2.    This case was commenced on January 19, 2011, by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Since then, the Debtor has been, and continues to be, a Debtor-in-Possession.  No examiner or trustee has been appointed and no official committee of creditors has been established.

3.    The Debtor was established in 1995.  LNI designs, manufactures, sells and installs custom sign and shelter solutions for transit systems and municipalities nationwide. The Debtor's clients include the Los Angeles County MTA, the Port of Los Angeles, and Kansas City Area Transportation.

4.    I am LNI's president and 100% share holder.  I oversee LNI's day to day operations.  Geoff Wallings maintains the Debtor's books and records.  In the past few days, the Debtor has brought in additional management including the Patrick Rettig Corporation to act as its C.F.O.  In connection with bringing additional management to assist LNI, I also determined it was necessary to employ new counsel for the chapter 11 case.  This step was not taken lightly.

5.    LNI operates its business operation from a 15,000 square foot facility in Hawthorne, California.  LNI leases the facility from Bus Stop LLC, an entity

1   controlled by my mother.  No lease payments have been paid post-petition

2   to Bus Stop LLC.  The Debtor currently employs approximately 39

3   employees on an as needed basis.

4   6.   Prepetition, LNI had operated a manufacturing facility in Mexico to

5   supplement its production.  LNI ceased operations in Mexico in 2010.

6   There were various difficulties which are beyond the scope of this

7   Declaration.

8   7.   I have had some discussions with a potential purchaser for the Debtor's

9   assets.  I have determined not to continue with these discussions but instead

10   to reorganize the Debtor's business and pay a dividend to the unsecured

11   creditors.  The Debtor will not be selling its business assets.

12   8.   I learned late last week that the authorization to use cash collateral would

13   expire on March 11, 2011.  On Friday evening, March 4, 2011, I met with

14   members of the Debtor's management.  We worked to put together various

15   financial reports and a forecast.  We relied on the company's financial

16   books and records as maintained on the computer and as well as hard

17   copies.  We considered the Debtor's historical performance, the Debtor's

18   performance during the chapter 11 case thus far and also what I believe

19   the Debtor's future work will be.  The reports which I will be discussing

20   below were prepared on Friday evening and then revised as necessary on

21   Sunday, March 6, 2011.  The reports were prepared at my direction and

22   they are true and correct copies of what they appear to be.

23   9.   The budget for the next 7 weeks (through April 30, 2011) is attached here

24   as **Exhibit "A."** During this time period, LNI expects receipts of over

25   $600,000.00.  LNI will be working on two jobs (Bridges and Griffith) which

26   will create approximately $680,000 in receivables after the next interim

27   period concludes.  I see the period of time through the end of April, 2011,

28   as having different functions including (1) to build receivables which will be

1   paid thereafter and (2) to begin work on significant jobs I expect LNI will

2   receive in the next month or two.  The projection does not include adequate

3   protection payments and the U.S. Trustee's quarterly fee (due April 30,

4   2011) which will be paid from monies on hand.

5   10.   The Debtor has not lost money thus far in the chapter 11 case.  Though the

6   Debtor's receipts thus far are less than LNI projected, LNI kept its expenses

7   even lower.  As a result, the Debtor's cash position improved.    Attached

8   here as **Exhibit "B,"** and incorporated here by reference is a copy of an

9   actual-to-budget comparison of receipts, expenses and cash flow with cash

10   balances.  [4]  (The new forecast (Exhibit "A") contains category descriptions

11   which do not match the category descriptions found in the comparison

12   (Exhibit "B").  This is because the category descriptions used in the

13   comparison track those descriptions from the initial budget.  Those

14   description titles were not useful.)

15   11.   The Debtor has worked to build up future receivables.  It has done so by

16   continuing to work on jobs.  Should the Debtor not complete work on a job,

17   LNI would have great difficulty being paid.  A copy of the Debtor's

18   receivables list as of March 4, 2011, is attached here as **Exhibit "C,"** and

19   incorporated here by reference.  Note that the Debtor will post on March 7,

20   2011, the receipt of $82,425 for the Las Vegas Paving job.  Also, I believe

21   the RTC of Southern Nevada receivable will not be paid.

22   12.   The Debtor has kept its payables low.  Attached here as **Exhibit "D,"** is a

23   copy of the Debtor's payables list as of March 4, 2011.

24

25

───────────────

26   [4]      The Debtor cannot provide at the beginning of March an accrual based

27   Profit and Loss statement because month closing journal entries need to
be entered reconciling certain accounts such as inventory and work in

28   progress.  The Debtor is still waiting for final February invoices.

13.  The Debtor's profit and loss statement for the post-petition period in January, 2011, is attached here as **Exhibit "E,"** and incorporated here by reference.

14.  The Debtor's balance sheet as of January 31, 2011, is attached here as **Exhibit "F,"** and incorporated here by reference.  The balance sheet reflects a substantial asset base.

15.  I maintain a listing of jobs on which LNI has bid.  I categorizes the jobs into three categories: Those with a 90% chance of being awarded to the Debtor; Those with a 50% chance of being awarded to the Debtor; and those with a 10% chance of being awarded to the Debtor.  **Exhibit "G"** which is attached is a listing of the bid jobs and some analysis by me as to the likelihood certain jobs will be awarded to LNI.  The names of the jobs have been coded to protect LNI's bids.

16.  The Debtor's present asset base includes the following:

| | |
|---|---|
| Monies in the Bank: | $409,985 |
| Receivables: | $1,054,408 |
| Inventory: | $220,000 (plus an additional $30,000 in raw materials to be placed into inventory) |
| Machinery and Equipment: | $1,092,699 (book value) [5]  The Debtor recently received a written offer for the fixed assets for $750,000. |

17.  The Debtor seeks authority to use cash collateral in the ordinary course of business.  The Debtor seeks authority to use cash collateral through the

---

[5]  This asset listing does not include the Bank's security interest in Blakely's personal residence.

period ending April 30, 2011.  The Debtor will file a supplemental motion in early April for further use of cash collateral.

18. The Debtor needs cash collateral to remain in business.  Without cash collateral, the Debtor will be unable to continue and complete work in progress.  If LNI does not complete work, contractors and property owners will be loathe to pay receivables.  The Debtor has payroll and payroll taxes to pay as well as other expenses of operating the business.  Subcontractors will need to be paid for work being done.  If they are not paid, the Debtor's ability to collect receivables may be imperiled.

19. Variance.  The Motion describes the variance from the budget the Debtor is requesting.  LNI has done its best to make accurate projections concerning income and expenses.  However, budgeting is not an exact science, especially in light of negotiations with purchasers.  Given this, the Debtor requests it be permitted to vary from the proposed budget by as much as 20% in any one category.  The Motion describes the process the Debtor would like the Court to approve in the event the Debtor needs to vary from the budget in an amount greater than 20% in any one category.

20. Rolling Unspent Budgeted Monies Forward.  The budget is a weekly budget. As has already happened in this case, LNI has underspent in certain categories in some weeks.  The Debtor requests it be authorized to carry over from pervious weeks any unused monies to be used in the same categories in future weeks.  The Debtor also requests that the monies carried forward not count toward the variance.  Rollover is important as LNI projects expenses on a weekly basis but expenses may be deferred for various reasons.

21. Applying Overage to Costs of Goods Sold.  I do not know whether in the next period LNI's collections will exceed projections.  If this happens, this will probably mean LNI's orders are higher than projected.  If the Debtor is

- 14 -

1   bound by the budget, it may not be able to fulfill orders or it will need to

2   delay or turn away work.  To deal with this problem, the Debtor proposes

3   that to the extent monies exceed projected collections, the Debtor be

4   authorized to apply up to 75% of the overage to costs of goods sold.  This

5   would mean the Debtor would be putting monies into doing jobs and

6   creating receivables.

7   22.  The Bank's Interest Is Adequately Protected.  The Bank is afforded adequate

8   protection of its claims as follows in the manners described above and in

9   the Motion.

10  23.  Hearing This Motion This Week.  I ask that the Bank shorten time for notice

11  of a hearing on the Motion for Authority to Use Cash Collateral.  I learned

12  about the March 11th deadline for obtaining authority to use cash collateral

13  late last week and what it meant.  I worked Friday evening and Sunday

14  (March 4th and 6th) to prepare financial reports and also determined it

15  appropriate to retain new counsel for the Debtor.  Had I known earlier

16  about the March 11th and what it meant, I would have been encouraging

17  prior counsel to file a motion some time ago.

18  I declare under the laws of the U.S. of America and under penalty of

19  perjury that the foregoing facts are true and correct.

20  Executed this March __, 2011, at Hawthorne, California.

22  *see next page*

Scott Blakely

1    bound by the budget, it may not be able to fulfill orders or it will need to

2    delay or turn away work.  To deal with this problem, the Debtor proposes

3    that to the extent monies exceed projected collections, the Debtor be

4    authorized to apply up to 75% of the overage to costs of goods sold.  This

5    would mean the Debtor would be putting monies into doing jobs and

6    creating receivables.

7  22.   <u>The Bank's Interest Is Adequately Protected.</u>  The Bank is afforded adequate

8    protection of its claims as follows in the manners described above and in

9    the Motion.

10  23.  <u>Hearing This Motion This Week</u>.  I ask that the Bank shorten time for notice

11    of a hearing on the Motion for Authority to Use Cash Collateral.  I learned

12    about the March 11th deadline for obtaining authority to use cash collateral

13    late last week and what it meant.  I worked Friday evening and Sunday

14    (March 4th and 6th) to prepare financial reports and also determined it

15    appropriate to retain new counsel for the Debtor.  Had I known earlier

16    about the March 11th and what it meant, I would have been encouraging

17    prior counsel to file a motion some time ago.

18    I declare under the laws of the U.S. of America and under penalty of

19  perjury that the foregoing facts are true and correct.

20    Executed this March __, 2011, at Hawthorne, California.

21

22

23    Scott Blakely

24

25

26

27

28

# DECLARATION OF STEVEN R. FOX

I, Steven R. Fox, declare as follows:

1.  I am an attorney admitted to practice before the Courts of the State of California and before the District Court for the Central District of California. My office for the practice of law is 17835 Ventura Blvd., Suite 306, Encino, CA 91316. My statements here are based on my personal knowledge and if called to testify concerning the contents of my Declaration, I could and would do so competently.

2.  This Declaration is offered to address the emergency aspect of LNI Custom Manufacturing, Inc.'s Motion for Authority to Use Cash Collateral ("Motion"). I met last week with Mr. Blakely to discuss concerns the Debtor has about its chapter 11 case and its direction. I was retained in the middle of last week. At that time, I learned the Debtor's authority to use cash collateral would expire on March 11, 2011. On my request, Mr. Blakely and others met on Friday evening to prepare the financial reports which are attached to the Motion. I met with Mr. Blakely and Mr. Kendall on Sunday, March 6, 2011 to prepare the Motion. Had I been retained earlier, the Motion would have been filed sooner.

3.  Though it is not the subject of this Motion, I have been paid a retainer from third parties. No monies have been paid by the Debtor to me.

4.  I am available for a hearing any day this week. I will not be available on Thursday, March 10th, before 11:00 a.m. due to hearings.

Executed this March 6, 2011, at Encino, California.

I declare under penalty of perjury and under the laws of the United States of America that the forgoing is true and correct.

_____
Steven R. Fox

# Exhibit "A"

**LNI Custom Manufacturing**
**Cash Forecast**

| | Fcst 3/5/2011 | Fcst 3/12/2011 | Fcst 3/19/2011 | Fcst 3/26/2011 | Fcst 4/2/2011 | Fcst 4/9/2011 | Fcst 4/16/2011 | Fcst 4/23/2011 |
|---|---|---|---|---|---|---|---|---|
| **Receipts:** | | | | | | | | |
| Total Receipts | $ 91,000 | $ 212,000 | $ 26,000 | $ 34,000 | $ 95,000 | $ - | $ 13,000 | $ 151,000 |
| **Expenditures:** | | | | | | | | |
| **COGS:** | | | | | | | | |
| Components and Other Costs | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 |
| Contract Labor | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| EE Reimbursements | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Material | 17,000 | 30,000 | 50,000 | 70,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Sub Contractors | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Trade Vendors | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Total COGS | $ 33,000 | $ 46,000 | $ 66,000 | $ 86,000 | $ 36,000 | $ 36,000 | $ 36,000 | $ 36,000 |
| **Expenses** | | | | | | | | |
| Accounting & Legal Services | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 |
| Commissions | 20,000 | | 20,000 | | 20,000 | | 20,000 | |
| Equipment Payments | 254 | 384 | | | 254 | 384 | | |
| Fuel | | 2,000 | | | | 2,000 | | 2,000 |
| Insurance | 1,507 | | 7,500 | | 1,507 | | 7,500 | |
| Miscellaneous | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Outside Services | - | - | 5,000 | - | 5,000 | 5,000 | 5,000 | - |
| Payroll | 54,500 | - | 47,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 |
| Payroll Taxes - Deductions | - | 13,000 | - | 15,000 | - | 15,000 | - | 15,000 |
| Rent | 9,000 | - | - | - | 9,000 | - | - | - |
| Utilities | 6,000 | - | - | - | 6,000 | - | - | - |
| Total Expenses | $ 96,261 | $ 20,384 | $ 84,500 | $ 20,000 | $ 88,761 | $ 22,384 | $ 79,500 | $ 20,000 |
| Total Expenditures | $ 129,261 | $ 66,384 | $ 150,500 | $ 106,000 | $ 124,761 | $ 58,384 | $ 115,500 | $ 56,000 |
| Net Cash Flow | $ (38,261) | $ 145,616 | $ (124,500) | $ (72,000) | $ (29,761) | $ (58,384) | $ (102,500) | $ 95,000 |
| Beginning Cash Balance | 409,985 | 371,724 | 517,340 | 392,840 | 320,840 | 291,079 | 232,695 | 130,195 |
| Receipts | 91,000 | 212,000 | 26,000 | 34,000 | 95,000 | - | 13,000 | 151,000 |
| Payments | (129,261) | (66,384) | (150,500) | (106,000) | (124,761) | (58,384) | (115,500) | (56,000) |
| Ending Cash Balance | $ 371,724 | $ 517,340 | $ 392,840 | $ 320,840 | $ 291,079 | $ 232,695 | $ 130,195 | $ 225,195 |

# Exhibit "B"

**LNH Custom Manufacturing — Cash Forecast**

| | First 1/29/2011 | Actual 1/29/2011 | Difference | Carryover + Budget | First 2/5/2011 | Actual 2/5/2011 | Difference | Carryover + Budget | First 2/12/2011 | Actual 2/12/2011 | Difference | Carryover + Budget | First 2/19/2011 | Actual 2/19/2011 | Difference | Carryover + Budget | First 2/26/2011 | Actual 2/26/2011 | Difference | Total Budget | Total Actual |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Receipts | | | | | | | | | | | | | | | | | | | | | |
| Total Receipts | 478,235 | 395,353 | (89,882) | 510 | 510 | | (81,392) | (81,392) | | 84,796 | 84,796 | 516,655 | 516,655 | 513,251 | 183,971 | (565,221) | | 183,971 | (331,250) | 903,450 | 672,150 |
| Expenses | | | | | | | | | | | | | | | | | | | | | |
| Payroll | | | | | | | | | | | | | | | | | | | | | |
| Payroll Taxes, Deductions | 12,000 | 15,600 | (3,600) | 42,500 | 42,500 | 43,538 | (1,038) | (1,038) | 35,000 | 33,962 | 31,000 | 2,962 | 2,962 | 5,774 | 15,387 | (9,623) | | 2,962 | (9,623) | 77,500 | 74,538 |
| Commissions | | | | 20,000 | 20,000 | 10,000 | (2,320) | (2,320) | 10,000 | (4,824) | (4,824) | 30,000 | 12,000 | 1,602 | | (6,226) | | | (9,623) | 25,300 | 34,923 |
| Total Automatic Payments | 2,581 | 2,581 | 2,581 | 508 | 3,099 | 3,099 | 3,099 | 384 | 3,473 | 3,473 | 3,464 | 4,484 | 7,657 | 7,957 | 7,871 | 11,860 | | 11,860 | | 40,000 | 20,000 |
| Total Payments on Credit Cards | | | | | | | 2,688 | (2,688) | (2,688) | | | (2,688) | | 6,703 | (8,671) | (8,671) | | | (8,671) | | 8,071 |
| Total Payments by Check | 29,445 | 2,662 | 26,783 | 20,000 | 46,783 | 26,900 | 19,690 | 12,000 | 47,196 | 19,500 | 18,896 | 18,896 | (18,412) | 57,239 | 40,827 | 7,871 | | | 33,156 | 138,184 | 105,029 |
| Total Material Projection | 190,500 | 190,500 | | 11,000 | 201,500 | 201,500 | 201,500 | 3,000 | 204,500 | 85,790 | 118,710 | 279,780 | 397,490 | 397,490 | | 397,490 | | 397,490 | 397,490 | 483,280 | 85,790 |
| Total Expenses | 224,526 | 18,265 | 216,261 | 94,008 | 310,269 | 84,299 | 225,970 | 16,884 | 242,654 | 135,817 | 106,837 | 357,764 | 464,601 | 67,701 | 396,900 | 73,143 | | 470,042 | 23,088 | 776,124 | 309,150 |
| Net Cash Flow | 241,709 | 377,088 | | (93,498) | | (64,290) | | (16,884) | | (51,021) | | 158,891 | | (59,871) | | (73,142) | | 160,903 | | 217,276 | 343,000 |
| Beginning Cash Balance | 41,221 | 66,985 | | 282,930 | | 444,073 | | 189,432 | | 172,748 | | 516,655 | | 331,639 | | | 249,082 | | | | |
| Receipts | 478,235 | 395,353 | | 510 | | | | | 309,753 | | | | 8,030 | | 331,639 | | 183,971 | | | | |
| Payments | (224,526) | (18,265) | | (94,008) | | (84,299) | | (16,884) | | (135,817) | | (357,764) | | (87,701) | | (73,142) | | (23,088) | | | |
| Ending Cash Balance | 282,930 | 444,073 | | 189,432 | | 350,774 | | 172,748 | | 308,763 | | 351,639 | | 249,082 | | 258,497 | | 409,985 | | | |

**Uni-Carbon Manufacturing — Cash Forecast**

| | First 1/29/2011 | Actual 1/29/2011 | Difference | First 2/5/2011 | Compeer +Budget 2/5/2011 | Actual 2/5/2011 | Difference | First 2/12/2011 | Compeer +Budget 2/12/2011 | Actual 2/12/2011 | Difference | First 2/19/2011 | Compeer +Budget 2/19/2011 | Actual 2/19/2011 | Difference | First 2/26/2011 | Compeer +Budget 2/26/2011 | Actual 2/26/2011 | Difference | Total Budget | Total Actual |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | | | | | | | |
| Total Receipts | $ 476,226 | $ 395,353 | $ (80,882) | $ 510 | | $ (81,392) | $ 510 | $ (81,392) | | $ 84,796 | $ (81,392) | $ 84,796 | $ 3,404 | $ 518,665 | $ 513,261 | $ 8,000 | $ (505,221) | $ 183,971 | $ (321,250) | $ 993,450 | $ 672,150 |
| **Expenditures** | | | | | | | | | | | | | | | | | | | | | |
| **Payroll** | | | | | | | | | | | | | | | | | | | | | |
| Payroll Taxes - Deductions | $ 12,000 | $ 15,603 | $ (3,603) | $ 42,500 | $ 42,500 | $ 43,538 | $ (1,038) | $ 35,000 | $ 33,962 | $ 31,000 | $ 2,962 | $ 12,000 | $ 12,000 | $ 2,962 | $ 77,500 | $ 74,538 |
| Commissions | $ 12,000 | $ 15,603 | $ (3,603) | $ 20,000 | $ 20,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 25,300 | $ 34,923 |
| **Automatic Payments** | | | | | | | | | | | | | | | | | | | | | |
| Commerce - Equipment | | | | | | | | | | | | | | | | | | | | | |
| Ford Credit - F150 - '06 #1 | | | | | | | | | $ 479 | $ 479 | $ 479 | $ 479 | $ 479 | $ 479 | $ 479 |
| Ford Credit - F150 - '06 #2 | | | | | | | | | $ 483 | $ 453 | $ 453 | $ 453 | $ 453 | $ 453 |
| Ford Credit - F150 - '07 #3 | | | | | | | | | $ 598 | $ 598 | $ 598 | $ 598 | $ 598 | $ 598 |
| Ford Credit - F350 - '06 | $ 617 | | | $ 617 | $ 617 | $ 617 | $ 1,234 |
| Hrsch - .004 - National | $ 1,964 | | | | | | | $ 1,964 | $ 1,964 | $ 1,964 | $ 3,928 |
| Hrsch - .005 | | | | $ 508 | | | | $ 2,966 | $ 2,966 | $ 2,966 | $ 2,966 | $ 2,966 |
| Topeka Amer Business | | | | $ 508 | | | | $ 617 | $ 617 | $ 1,322 | $ 1,322 | $ 1,322 | $ 1,322 |
| US Bank | | | | $ 384 | $ 384 | $ 384 | $ 384 | $ 384 | $ 384 | $ 384 | $ 384 |
| Wells Fargo Financial | $ 2,581 | | $ 2,581 | $ 508 | $ 3,089 | $ 3,089 | $ 3,473 | $ 3,473 | $ 4,484 | $ 7,957 | $ 7,957 | $ 3,903 | $ 11,860 | $ 11,860 | $ 11,860 |
| American Express #1 Sherwood | | | | | | | | | | | | | | | | | | | | | |
| American Express #2 Sherwood | | | | | | | | | | | | | | | | | | | | | |
| Total Automatic Payments | | | | | | | | | | | | | | | | | | | | | |
| **Payments on Credit Cards** | | | | | | | | | | | | | | | | | | | | | |
| American Express #1 - Scott | | | | $ (2,668) | $ 2,668 | $ (2,668) | $ (2,668) | $ (2,668) | $ 9,503 | $ 3,903 | $ 8,671 | $ 8,671 |
| AFCO - Insurance Premium | | | | | | | | | | | | | | | | | | | | | |
| Total Payments on Credit Cards | | | | | | | | | | | | | | | | | | | | | |
| **Payments by Check** | | | | | | | | | | | | | | | | | | | | | |
| Insurance - CA Choice | | | | | | | | | $ 7,500 | $ 7,500 | $ 7,500 | $ 7,500 |
| Insurance - Express W/ Comp. | | | | | | | | | | | | | | | | | | | | | |
| Insurance - Golden Eagle | | | | | | | | | | | | | | | | | | | | | |
| AFCO - Insurance Premium | $ 1,507 | | $ 1,507 | | | | | | $ 596 | $ 596 | $ 1,507 |
| E/E Reimbursements | | | | | | | | | | | | | $ 10,301 | $ 10,301 | $ 10,301 | $ 10,301 |
| Trade Vendors | $ 5,000 | | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 10,000 | $ 10,000 | $ 5,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 5,000 |
| Loan Repay | $ 2,000 | | $ 2,000 | | | | | $ 2,966 | $ 2,966 | $ 10,000 | $ 10,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 15,000 | $ 25,000 |
| Loan Repay - LOC | | | | | | | | | | | | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 |
| Rent | $ 15,938 | | $ 15,938 | | | | | | $ 15,938 | $ 15,938 | $ 15,938 | $ 15,938 | $ 15,938 | $ 31,876 |
| Utilities | | | | $ 8,000 | | | | $ 8,000 | $ 8,000 | $ 6,000 | $ 8,000 | $ 8,000 | $ 8,000 | $ 8,000 |
| Contract Labor | $ 1,000 | | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 6,000 | $ 11,000 | $ 11,000 | $ 11,000 | $ 11,000 |
| Accounting Services | $ 1,000 | | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 2,000 | $ 2,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 5,000 |
| E/E Reimbursements | $ 1,000 | | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 2,000 | $ 2,000 | $ 1,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 5,000 |
| Trade Vendors | $ 5,000 | | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 10,000 | $ 10,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 25,000 |
| Legal/Outside Accounting | $ 2,000 | | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,966 | $ 2,966 | $ 10,000 | $ 10,000 | $ 16,000 | $ 16,000 | $ 20,000 |
| Post Petition Vendor Payables | | | | | | | | | | | | | | | | | | | | | |
| Steel/Metal | | | | | | | | | | | | | | | | | | | | | |
| Sub Contractors | | | | | | | | | | | | | | | | | | | | | |
| Other | $ 4,000 | | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 4,000 | $ 8,000 | $ 8,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 |
| Misc. Components and Other Costs | $ 29,445 | $ 2,662 | $ 26,783 | $ 20,000 | $ 46,783 | $ 28,900 | $ 18,890 | $ 12,000 | $ 30,890 | $ 47,790 | $ (17,016) | $ 19,500 | $ 2,484 | $ 18,896 | $ 57,239 | $ 40,827 | $ 7,671 | $ 33,156 | $ 138,184 | $ 105,028 |
| Total Payments by Check | | | | | | | | | | | | | | | | | | | | | |
| Material Projection for Ongoing Jobs | | | | $ 9,000 | | | | | | | | | | | | | | | $ 9,000 |
| Artisan Court | | | | | | | | | | | | | | | | | | | | | |
| Griffin - Harry Bridges | | | | | | | | | | | | | | | | | | | | | |
| Shop Drawings | | | | | | | | | | | | | | | | | | | | | |
| Mock Up | | | | | | | | | | | | | | | | | | | | | |
| Excavation / rebar / footings | | | | | | | | | | | | | | | | | | | | | |
| Structural Steel (material on site) 80% | | | | | | | | | | | | | | | | | | | | | |
| Structural Steel (install) 40% | | | | | | | | | | | | | | | | | | | | | |
| Electrical Lighting | | | | | | | | | | | | | | | | | | | | | |
| Cladding | $ 175,500 | | | | | | | | | | | | | | | | | | | $ 175,500 |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Arch/ Stainless Steel Mesh (mid) 75% | - | - | - | - | - | - | - | 258,780 | 258,780 | 258,780 | 258,780 | 258,780 | - |
| Arch/ Stainless Steel Mesh (line) 25% | - | - | - | - | - | - | - | 258,780 | - | - | - | - | 258,780 |
| Masonry | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DeSite (Gates Construction) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Disneyland Hotel | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hilbers Shelters | - | - | - | - | - | - | - | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| LACTMA - Redondo Beach | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Lake Park Village | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Boulder Highway | 15,000 | - | - | - | - | - | - | - | - | - | - | - | - |
| Boulder Highway Markers | | 2,000 | - | - | - | - | - | - | - | - | - | - | 15,000 |
| Landscape Development | | - | - | - | - | - | - | - | - | - | - | 2,000 | - |
| Ross Tahoe | - | - | - | - | 1,000 | 1,000 | 1,000 | - | - | 1,000 | 1,000 | 1,000 | 1,000 |
| Seventone | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Serra/ Resource Assn. - Vero Beach | - | - | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | - | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Shelter Chain | - | - | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | - | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Shelter Chain | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Statue Construction | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Transit Shelters | - | - | - | - | - | - | - | - | - | - | - | - | - |
| UPA | - | - | - | - | - | - | - | - | - | - | - | - | - |
| West Sacramento | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Wichita Benches | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Material Projection** | $ 190,500 | $ 190,500 | $ 11,000 | $ 201,500 | $ 3,000 | $ 85,700 | $ 118,710 | $ 278,780 | $ - | $ - | $ - | $ - | - |
| | | | | | | | | | | | | | |
| Net Cash Flow | $ 241,709 | $ 377,088 | $ (90,498) | $ (84,299) | $ (16,684) | $ (51,921) | $ 158,891 | $ 67,701 | $ (59,871) | $ (73,142) | $ 180,903 | | |
| **Total Expenditures** | $ 234,526 | $ 216,281 | $ 94,008 | $ 225,970 | $ 16,664 | $ 135,817 | $ 357,784 | $ 464,601 | $ 67,701 | $ 73,142 | $ 470,042 | $ 446,974 | $ 329,150 |
| | | | | | | | | | | | | | |
| Beginning Cash Balance | 41,221 | 96,995 | 262,930 | 444,073 | 189,432 | 359,774 | 172,748 | | 306,753 | 331,839 | 248,062 | | 217,276 |
| Receipts | 476,235 | 395,353 | 510 | | | 84,796 | 515,655 | | 8,030 | | 183,971 | | 776,124 |
| Payments | (234,526) | (18,260) | (94,008) | (84,299) | (16,684) | (135,817) | (357,784) | | (87,701) | (73,142) | (23,068) | | 343,000 |
| **Ending Cash Balance** | $ 282,930 | $ 444,073 | $ - | $ 359,774 | $ 172,748 | $ 308,753 | $ 331,839 | $ 248,062 | $ 256,497 | $ - | $ 405,965 | | |

# Exhibit "C"

023

**LNI Custom Mfg. Inc.**
**A/R Aging Summary**
As of March 4, 2011

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| **FCI / Flour / Parsons, J.V.** | | | | | | |
| Expo Line - 280552 | 0.00 | 0.00 | 0.00 | 0.00 | 5,537.61 | 5,537.61 |
| Waiting for authorization to deliver - Also, client changed copy on 7 signs - $18,000.00 change order coming | | | | | | |
| | | | | | | |
| **Griffith Company** | | | | | | |
| POLA Cabrillo Marina Way - 290009P | 0.00 | 0.00 | 0.00 | 0.00 | 393,329.02 | 393,329.02 |
| Product is manufactured, and on the job site. Waiting for 2nd phase to install, expect to begin in May | | | | | | |
| | | | | | | |
| **Harry Bridges** | | | | | | |
| Harry Bridges - 280560 | 0.00 | 12,962.78 | 279,004.12 | 0.00 | 0.00 | 291,966.90 |
| Work is ongoing, expect to complete in April | | | | | | |
| | | | | | | |
| **James Savattone** | | | | | | |
| Savattone Santa Cruz Shelter - 10029 | 0.00 | 0.00 | 4,466.06 | 0.00 | 0.00 | 4,466.06 |
| Job is complete | | | | | | |
| | | | | | | |
| **Kansas City Area Transportation Authority** | | | | | | |
| Kansas City Shelters - 290057 | 0.00 | 0.00 | 0.00 | 0.00 | 183,251.00 | 183,251.00 |
| Job is complete, waiting for close out with transportation authority. Expect in May | | | | | | |
| | | | | | | |
| **Las Vegas Paving** | | | | | | |
| Boulder Highway Shelters - 10008 | 0.00 | 82,425.52 | 0.00 | 0.00 | 0.00 | 82,425.52 |
| Paid on Friday, 3.4.2011 | | | | | | |
| | | | | | | |
| **Meisinger Construction, Co.** | | | | | | |
| UPA Minnesota - 10020 | 0.00 | 0.00 | 0.00 | 0.00 | 91,152.00 | 91,152.00 |
| UPA Minnesota - 10021 | 0.00 | 0.00 | 0.00 | 0.00 | 9,845.00 | 9,845.00 |
| Total Meisinger Construction, Co. | 0.00 | 0.00 | 0.00 | 0.00 | 100,997.00 | 100,997.00 |
| Job is complete, waiting for payment | | | | | | |
| | | | | | | |
| **Roek Construction** | | | | | | |
| Tracy Shelters - 280064P | 0.00 | 0.00 | 0.00 | 0.00 | 1,739.68 | 1,739.68 |
| Job is complete, waiting for payment | | | | | | |
| | | | | | | |
| **RTC of Southern Nevada** | | | | | | |
| RTC Shelters - 290061 | 0.00 | 0.00 | 0.00 | 0.00 | 324,000.00 | 324,000.00 |
| We believe this will be written off to bad debt | | | | | | |
| | | | | | | |
| **Senior Resource Association, Inc.** | | | | | | |
| Vero Beach Shelters - 290064 | 0.00 | 3,936.00 | 0.00 | 0.00 | 0.00 | 3,936.00 |
| Job complete, waiting for payment | | | | | | |
| | | | | | | |
| **Shelter Clean** | | | | | | |
| Shelter Clean - 918559 | 0.00 | 2,981.95 | 0.00 | 0.00 | 0.00 | 2,981.95 |
| Shelter Clean - 918560 | 0.00 | 2,981.95 | 0.00 | 0.00 | 0.00 | 2,981.95 |
| Total Shelter Clean | 0.00 | 5,963.90 | 0.00 | 0.00 | 0.00 | 5,963.90 |
| Job complete, waiting for payment | | | | | | |
| | | | | | | |
| **Sierra Landscape Company** | | | | | | |
| Gene Autry Monument Sign - 290048P | 0.00 | 0.00 | 0.00 | 0.00 | 2,376.27 | 2,376.27 |
| Job complete, waiting for payment | | | | | | |
| | | | | | | |
| **Walt Disney Imagineering** | | | | | | |
| Disney California Ad - Main Entry - 11004 | 0.00 | 20,562.00 | 0.00 | 0.00 | 0.00 | 20,562.00 |
| Water Slide Marquee - 10031 | 0.00 | 12,977.97 | 27,305.00 | 0.00 | 0.00 | 40,282.97 |
| Total Walt Disney Imagineering | 0.00 | 33,539.97 | 27,305.00 | 0.00 | 0.00 | 60,844.97 |
| Milestones met, waiting for payment | | | | | | |
| | | | | | | |
| **TOTAL** | 0.00 | 138,828.17 | 310,775.18 | 0.00 | 1,011,230.58 | 1,460,833.93 |

024

# Exhibit "D"

**LNI Custom Mfg, Inc**
**A/P Aging Summary**
As of March 4, 2011

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| AFCO - Insurance Premium | 0.00 | 71.77 | 0.00 | 0.00 | 0.00 | 71.77 |
| Allied Insurance | 0.00 | 493.59 | 0.00 | 0.00 | 0.00 | 493.59 |
| Bus Stop, LLC | 0.00 | 7,500.00 | 7,500.00 | 0.00 | 0.00 | 15,000.00 |
| COVAD Communications | 0.00 | 436.91 | 0.00 | 0.00 | 0.00 | 436.91 |
| Falcon Leasing | 0.00 | 0.00 | 1,284.43 | 0.00 | 0.00 | 1,284.43 |
| FedEx | 0.00 | 406.89 | 995.57 | 0.00 | 0.00 | 1,402.46 |
| Ford Credit | 0.00 | 1,655.91 | 1,655.91 | 0.00 | 0.00 | 3,311.82 |
| Intech Funding Corp | 0.00 | 5,078.30 | 0.00 | 0.00 | 0.00 | 5,078.30 |
| N. Glantz & Son, Inc | 0.00 | 112.60 | 0.00 | 0.00 | 0.00 | 112.60 |
| NAPS | 0.00 | 442.13 | 10,064.35 | 0.00 | 0.00 | 10,506.48 |
| SCE - CH | 0.00 | 3,568.97 | 0.00 | 0.00 | 0.00 | 3,568.97 |
| Shell Oil Company | 0.00 | 2,406.78 | 0.00 | 0.00 | 0.00 | 2,406.78 |
| Sprint - Cell | 0.00 | 1,001.07 | 0.00 | 0.00 | 0.00 | 1,001.07 |
| Sprint - Toll Free | 0.00 | 50.50 | 0.00 | 0.00 | 0.00 | 50.50 |
| Toshiba America Business Solut | 0.00 | 254.39 | 0.00 | 0.00 | 0.00 | 254.39 |
| US Bank | 0.00 | 1,519.99 | 1,321.73 | 0.00 | 0.00 | 2,841.72 |
| Verizon California | 0.00 | 71.42 | 0.00 | 0.00 | 0.00 | 71.42 |
| Wells Fargo Financial Leasing | 0.00 | 384.29 | 0.00 | 0.00 | 0.00 | 384.29 |
| TOTAL | 0.00 | 25,455.51 | 22,821.99 | 0.00 | 0.00 | 48,277.50 |

026

# Exhibit "E"

8:20 AM
02/24/11

**LNL Custom Mfg, Inc.**
**Profit & Loss - YTD**
January 2011

| | 1/19 - 1/31 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| **40 · SALES** | |
| 4211 · Sales Discounts | (0.01) |
| **402 · Shelter** | |
| 4040 · Misc | |
| 4036 · Freight | |
| 4031 · Mfg & Install | (772.02) |
| Total 402 · Shelter | (772.02) |
| | |
| **401 · Signage** | |
| 4020 · Misc | |
| 4011 · Mfg & Install | 25,284.02 |
| Total 401 · Signage | 25,284.02 |
| | |
| **Total 40 · SALES** | 24,511.99 |
| | |
| **Total Income** | 24,511.99 |
| | |
| **Cost of Goods Sold** | |
| **5 · COGS** | |
| **56 · COGS - Other** | |
| **561 · Other** | |
| 5616 · Import / Export | 53.98 |
| 5615 · Warranty & N/C | |
| 5613 · Freight | |
| 5612 · Permits & Staff Time | |
| Total 561 · Other | 53.98 |
| | |
| Total 56 · COGS - Other | 53.98 |
| | |
| **50 · COGS - Shop** | |
| **503 · Warehouse Expense** | |
| 5031 · Supplies | (33.47) |
| Total 503 · Warehouse Expense | (33.47) |
| | |
| **502 · COGS Labor** | |
| 5026 · Benefits | |
| 5021 · Labor | 2,281.00 |
| 5022 · PTO & Holiday | |
| Total 502 · COGS Labor | 2,281.00 |
| | |
| **501 · COGS - Manufacturing** | |
| 5012 · Sub Mfg & Install | |
| 5011 · Materials & Installation | 2,548.00 |
| Total 501 · COGS - Manufacturing | 2,548.00 |
| | |
| Total 50 · COGS - Shop | 4,795.53 |
| | |
| Total 5 · COGS | 4,849.51 |
| | |
| **70 · Selling Expense** | |
| **702 · Sales Other** | |
| 7021 · Marketing | |
| Total 702 · Sales Other | 0.00 |
| | |
| **701 · Sales Labor** | |
| 7017 · Benefits | |
| 7013 · PTO & Holiday | |
| 7012 · Commission | |
| 7011 · Labor | |
| Total 701 · Sales Labor | 0.00 |
| | |
| Total 70 · Selling Expense | 0.00 |
| | |
| **Total COGS** | 4,849.51 |
| | |
| **Gross Profit** | 19,662.48 |
| | |
| **Expense** | |
| **751 · G & A Labor** | |
| 7512 · PTO & Holiday | |
| 7516 · Benefits | |
| 7511 · Labor | |
| 7514 · Payroll Taxes | |
| Total 751 · G & A Labor | 0.00 |
| | |
| **80 · G & A - Overhead** | |
| **801 · T & E** | |
| 8014 · Travel & Lodging | |
| 8013 · Fuels & Oils | |

028

LNI Custom Mfg, Inc
Profit & Loss - YTD
January 2011

|  | 1/19 - 1/31 |
|---|---|
| 8012 · Promotion | |
| **Total 801 · T & E** | 0.00 |
| | |
| 802 · Supplies | |
| 8023 · Postage & Overnight | |
| 8022 · Computer | |
| 8024 · Other | |
| **Total 802 · Supplies** | 0.00 |
| | |
| 803 · Utility | |
| 8031 · Electricity | |
| 8032 · Natural Gas | |
| 8033 · Refuse | |
| 8034 · Communication | |
| 8035 · Water & Sewage | |
| **Total 803 · Utility** | 0.00 |
| | |
| 804 · R & M | |
| 8042 · Equipment | |
| 8043 · Vehicles | |
| **Total 804 · R & M** | 0.00 |
| | |
| 805 · Rental | |
| 8051 · Building | 7,627.32 |
| 8052 · Equipment | 168.37 |
| **Total 805 · Rental** | 7,795.69 |
| | |
| 806 · Taxes, Ins & Licenses | |
| 8061 · Insurance - Liability | 493.58 |
| 8062 · Licenses | |
| **Total 806 · Taxes, Ins & Licenses** | 493.58 |
| | |
| 807 · Outside | |
| 8076 · Fees | |
| 8071 · Accounting | 1,800.00 |
| 8073 · Employee Recruiting | |
| 8075 · Legal | |
| **Total 807 · Outside** | 1,800.00 |
| | |
| **Total 80 · G & A - Overhead** | 10,089.27 |
| | |
| **Total Expense** | 10,089.27 |
| | |
| **Net Ordinary Income** | 9,573.21 |
| | |
| Other Income/Expense | |
| Other Income | |
| 90 · Other Income | |
| 9012 · Misc Income | |
| **Total 90 · Other Income** | |
| | |
| **Total Other Income** | |
| | |
| Other Expense | |
| 91 · Other Expense | |
| 913 · Misc Expense | |
| 9132 · Miscellaneous | |
| **Total 913 · Misc Expense** | |
| | |
| 911 · Other Expense | |
| 9114 · Interest Expense | 196.02 |
| 9112 · Bank Charges | 1.00 |
| **Total 911 · Other Expense** | 197.02 |
| | |
| 912 · Depreciation & Amortization | |
| 9122 · Amortization | 1,125.21 |
| 9121 · Depreciation | 6,240.82 |
| **Total 912 · Depreciation & Amortization** | 7,366.03 |
| | |
| **Total 91 · Other Expense** | 7,563.05 |
| | |
| **Total Other Expense** | 7,563.05 |
| | |
| **Net Other Income** | (7,563.05) |
| | |
| **Net Income** | 2,010.16 |

# Exhibit "F"

2:39 PM
02/28/11

**NL Custom Mfg, Inc**
**Balance Sheet - YTD**
As of January 31, 2011

|  | Jan 31, 11 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 1016 · Citizens Bank - General New | 425,357.46 |
| 1015 · Trust Account | 7,046.64 |
| 1013 · CD | 2,432.44 |
| 1012 · Comerica - General | -3,305.35 |
| 1022 · Comerica - Payroll | -2,093.05 |
| 1031 · Petty Cash - Hawthorne | 500.00 |
| **Total Checking/Savings** | 429,938.14 |
| **Accounts Receivable** | |
| 1111 · Accounts Receivable | 1,591,944.08 |
| **Total Accounts Receivable** | 1,591,944.08 |
| **Other Current Assets** | |
| 1112 · Allowance For Bad Debts | -335,687.15 |
| 2031 · Customer Deposits | -47,696.98 |
| 1131 · Employee Receivable | 2,077.25 |
| 1511 · Prepaid - Insurance | 54,248.01 |
| 1512 · Prepaid - Other | 36,075.18 |
| 1911 · Suspense | 628.35 |
| 13 · WIP | |
| 1311 · Labor | 22,695.00 |
| 1321 · Materials & Installation | -295,937.00 |
| **Total 13 · WIP** | -273,242.00 |
| **Total Other Current Assets** | -563,597.34 |
| **Total Current Assets** | 1,458,284.88 |
| **Fixed Assets** | |
| 1611 · Autos & Trucks | |
| 1612 · A/D - Autos Trucks | -244,297.07 |
| 1611 · Autos & Trucks - Other | 317,280.45 |
| **Total 1611 · Autos & Trucks** | 72,983.38 |
| 1621 · Computer & Office Equipment | |
| 1622 · A/D - Computers & Office Equip | -236,792.58 |
| 1621 · Computer & Office Equipment - Other | 242,976.73 |
| **Total 1621 · Computer & Office Equipment** | 6,184.15 |
| 1631 · Furniture & Fixtures | |
| 1632 · A/D - Furniture & Fixtures | -20,736.69 |
| 1631 · Furniture & Fixtures - Other | 20,848.11 |
| **Total 1631 · Furniture & Fixtures** | 111.42 |
| 1651 · Incorporation Costs | |
| 1652 · A/A - Incorporation Costs | -2,564.17 |
| 1651 · Incorporation Costs - Other | 2,550.00 |
| **Total 1651 · Incorporation Costs** | -14.17 |
| 1661 · Leasehold Improvements | |
| 1662 · A/A - Leasehold Improvements | -67,336.31 |
| 1661 · Leasehold Improvements - Other | 180,303.65 |
| **Total 1661 · Leasehold Improvements** | 112,967.34 |
| 1641 · Machinery & Equipment | |
| 1642 · A/D - Machinery & Equipment | -780,709.77 |
| 1641 · Machinery & Equipment - Other | 1,092,699.14 |
| **Total 1641 · Machinery & Equipment** | 311,989.37 |
| 1671 · Software | |
| 1672 · A/A - Software | -176,836.04 |

031

2:39 PM
02/28/11

**LNI Custom Mfg, Inc**
**Balance Sheet - YTD**
As of January 31, 2011

| | Jan 31, 11 |
|---|---|
| 1671 · Software - Other | 204,074.06 |
| Total 1671 · Software | 27,238.02 |
| 1681 · Start-Up Costs | |
| 1682 · A/A - Start-Up Costs | -4,673.74 |
| 1681 · Start-Up Costs - Other | 4,647.92 |
| Total 1681 · Start-Up Costs | -25.82 |
| Total Fixed Assets | 531,433.69 |
| Other Assets | |
| 1719 · Deposits - Other | 95,052.16 |
| 1711 · Deposits - Rent | 24,006.28 |
| Total Other Assets | 119,058.44 |
| TOTAL ASSETS | 2,108,777.01 |
| LIABILITIES & EQUITY | |
| Liabilities | |
| Current Liabilities | |
| Accounts Payable | |
| 2010 · A/P - POST | 9,980.46 |
| 2011 · A/P | 1,652,905.74 |
| Total Accounts Payable | 1,662,886.20 |
| Credit Cards | |
| 2021 · Amex  #1 - 13004 | 3,336.19 |
| 2022 · Amex  #2 - 02004 | 46,178.68 |
| 2023 · Amex  #3 - 04001 | 3,780.35 |
| 2024 · B of A - Visa 3170 | 25,292.72 |
| 2025 · Citi Cards  #1 -1670 | 15,747.46 |
| 2026 · Citi Cards  #2 -5423 | 35,410.10 |
| Total Credit Cards | 129,745.50 |
| Other Current Liabilities | |
| 2119 · Sales Tax - Audit | 140,000.00 |
| 203 · Other Payables | |
| 2032 · Customer Overpayments | 8,745.10 |
| Total 203 · Other Payables | 8,745.10 |
| 26 · Short Term Debt | |
| 262 · Capital Leases | |
| 2675 · Intech Funding - 005 | 30,310.00 |
| 2655 · Falcon Leasing | 9,800.00 |
| 2674 · Intech Funding - 004 | 19,636.00 |
| 2685 · US Bank - 775787 | 9,051.60 |
| Total 262 · Capital Leases | 68,797.60 |
| 261 · Notes Payable | |
| 2611 · Comerica - LOC | 1,295,600.00 |
| 2614 · Comerica - ELOC | 55,030.20 |
| 2634 · Ford Credit - 41195999 | 3,583.09 |
| 2636 · Ford Credit - 41594857 | 6,089.24 |
| 2638 · Ford Credit - 43001434 | 7,034.00 |
| Total 261 · Notes Payable | 1,367,336.53 |
| Total 26 · Short Term Debt | 1,436,134.13 |
| 22 · Payroll Liabilities | |
| 222 · Payroll - Other | |
| 2228 · Accrued Vacation & Holiday | 17,156.81 |
| 2222 · Accrued Comm | 115,472.75 |
| 2223 · Garnishments | 934.16 |
| Total 222 · Payroll - Other | 133,563.72 |

2:39 PM
02/28/11

**LNI Custom Mfg, Inc**
**Balance Sheet - YTD**
As of January 31, 2011

|  | Jan 31, 11 |
|---|---:|
| **221 · PR Taxes & Liab** | |
| 2219 · FUTA | 751.82 |
| 2218 · SUI | 5,920.59 |
| 2217 · SDI | -219.08 |
| 2216 · Medicare - ER | -308.04 |
| 2215 · Medicare - EE | -308.04 |
| 2214 · FICA - ER | -1,317.06 |
| 2213 · FICA - EE | -1,317.06 |
| 2212 · State | -670.02 |
| 2211 · Federal | -1,998.00 |
| **Total 221 · PR Taxes & Liab** | 535.11 |
| **Total 22 · Payroll Liabilities** | 134,098.83 |
| 2110 · Sales Tax Payable | 23,682.43 |
| **Total Other Current Liabilities** | 1,742,660.49 |
| **Total Current Liabilities** | 3,535,292.19 |
| **Long Term Liabilities** | |
| **27 · Long Term Debt** | |
| **272 · Capital Leases** | |
| 2775 · Intech Funding - 005 | 51,934.51 |
| 2755 · Falcon Leasing | 16,692.06 |
| 2774 · Intech Funding - 004 | 4,477.12 |
| **Total 272 · Capital Leases** | 73,103.69 |
| **271 · Notes Payables** | |
| 2738 · Ford Credit - 43001434 | 5,275.04 |
| 2714 · Comerica - ELOC | 36,687.18 |
| **Total 271 · Notes Payables** | 41,962.22 |
| **Total 27 · Long Term Debt** | 115,065.91 |
| **Total Long Term Liabilities** | 115,065.91 |
| **Total Liabilities** | 3,650,358.10 |
| **Equity** | |
| 3212 · S-Corporation Distributions | -184,197.33 |
| 3011 · Common Stock | 21,000.00 |
| 3000 · Opening Bal Equity | -482,297.22 |
| 3111 · Paid In Capital | 900,372.85 |
| 3211 · Retained Earnings | -1,861,099.84 |
| Net Income | 64,640.45 |
| **Total Equity** | -1,541,581.09 |
| **TOTAL LIABILITIES & EQUITY** | 2,108,777.01 |

033

# Exhibit "G"

## Likely Sales - Client has quote and we consider 90% chance of receiving job

| Proposed Job | Sub or Prime | Bid Date | Expected Award Date | Est. Amount | Scope of Work | Install or Ship Only | Projected Completion Date - Install or Delivery |
|---|---|---|---|---|---|---|---|
| EG<br>This job has been authorized, and approved relative to an existing multi-year contract - City's comments are to order "Early March" | Prime | Existing Contract | March | $300,000.00 | 40 Elk Grove Shelters | Ship & Install | |
| EM<br>Contract has been received, along with approved shop drawings. The included a performance bond, due to the request for 50% deposit, bonding prior, we have requested the bond removed -<br>As this is a repeat customer, and have not had bonding requirements in the past, we expect this to be finalized shortly | Prime | 12/10/2011 | March | $291,000.00 | 30 shelters | Ship & Install | May |
| Ex - FS<br>This is a repeat customer, with additional work for existing location - Verbally approved, just facilitation of paperwork | Sub | 1/11/2011 | March | $96,000.00 | STATION FURNISHINGS | Ship Only | December |
| MBnc<br>We have been named as a supplier for this multi-year contract with the City of Los Angeles - Expected to finalize contracts in March, and begin construction in April | SUB | 9/10/2010 | March | $8,000,000.00 | 6000 BENCHES | Ship Only | 3/12/2012 |
| SDAG<br>We have been named as a supplier for this contract with the city of SD - Protest period ended 3.4.11, with no protests.<br>Contractor is finalizing their contract ASAP, expect to receive notice to proceed shortly - Job to complete in October of 2011 | Sub | 2/11/2011 | March | $1,157,172.00 | 12 shelters | Ship & Install | 10/11/2011 |
| SGTM<br>Have city approvals, working on finalizing locations - this job will actually multiply by approx. 5 - They will be needing approx. 10 signs | SUB | 12/14/2010 | March | $37,200.00 | 2 pylon signs | Ship & Install | 5/1/2011 |
| NWY<br>Met the price point, have our product specified - Verbal approvals. Don't need product until October | Sub | 12/1/2010 | May | $22,000.00 | 1 bus Shelter | Ship Only | 10/11/2011 |
| City VS<br>1st submissions were approved, although the client requested a more robust solar system. Submitted documents, and pricing - Verbal approvals. This is a repeat customer | Prime | 2/10/2011 | March | $69,703.27 | 9 shelters | Ship and Install | 3/30/2011 |
| AxH<br>Met the price point, our product is specified, and this is the 2nd phase of job. | Prime | 2/28/2011 | March | $3,000.00 | Banner system | Ship and Install | 3/30/2011 |
| FF<br>Verbal approvals, expect agreement any day - Want completed product by end of March | Sub | 2/17/2011 | April | $112,000.00 | Banners / Shelters | Ship Only | 12/11/2011 |
| Mshelters<br>Submitted drawings, client has asked all the right questions, and verbal approval. They have the job, and need product. Promised in April | Prime | 2/17/2011 | March | $204,420.00 | 30 ad shelters | ship only | 11/11/2011 |
| LACMTA<br>Client changed names on product in our shop now. This is a change order, with verbal approval | Sub | 2/28/2011 | March | $18,591.65 | 7 sets of Grand Pylon Panels | FOB LNI | ASAP |
| GC MS<br>We were specified as a supplier, and repeat customer. We were the only bidder on this job, to multiple prime contractors - When they get the job, we will get the job | Sub | 3/3/2011 | | $153,444.00 | 3 shelters and roofs | ship only | |

TOTAL    $10,464,530.92

## Bids Under Review - Client has quote - fair indication of getting job - 50% chance of receiving job

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| EM St Signs | Sub | 12/10/2010 | April | $890,000.00 | STATION SIGNAGE | ship and install | 12/11/2011 |
| This is a repeat customer, with additional work for existing location - Verbally approved, just facilitation of paperwork | | | | | | | |
| Ex Phase 2 | SUB | 12/11/2011 | June | $5,600,000.00 | STATION AMENITIES | ship and install | 1/1/2012 |
| This is a repeat customer, and we historically have done all this work and are specified | | | | | | | |
| Gold Line Extension | SUB | 1/11/2011 | April | $1,100,000.00 | STATION AMENITIES | ship and install | 1/1/2012 |
| This is a repeat customer and we historically have done all this work and are specified | | | | | | | |
| V8 | Prime | March | March | $100,000.00 | 10 Shelters | Ship and Install | |
| This is a second phase of existing work that we have a signed contract on - In larger scope. Waiting for permits and determination of product configuration | | | | | | | |
| PR | Sub | 2/11/2011 | March | $10,429.00 | 3 SHELTERS | Ship Only | 4/11/2011 |
| This is a repeat customer and we historically have done all this work and are specified | | | | | | | |
| Only of V S | Sub | 1/26/2011 | April | $13,106.20 | 2 Shelters | ship and install | |
| This is a repeat customer and we historically have done all this work and are specified | | | | | | | |
| | | | TOTAL | $7,713,535.20 | | | |

## Upcoming Sales - Gathering Information to prepare a bid - 10% chance of receiving job - Price is a thumbnail

| Name | Role | Month | Month | Price | Quantity | Service | Date |
|---|---|---|---|---|---|---|---|
| COTA | Prime | March | | $450,000.00 | 80 trash receptacles | ship only | 5/11/2011 |
| OT SbX BRT | Sub | | May | $2,000,000.00 | 23 shelters | unknown | 12/1/2013 |
| BF Transit | Prime | March | March | $60,000.00 | 10 shelters | ship only | 9/1/2011 |
| HTC- | Sub | March | April | $1,500,000.00 | 125 Shelters | Ship only | |
| ~~Boulder~~ | ~~Pub~~ | ~~March~~ | ~~April~~ | ~~$0-25 shelters~~ | | ~~ship-only~~ | ~~Hold-for-now~~ |
| SB Supershelters | Prime | March | April | $350,000.00 | Shelters and Bench | Ship and Install | |
| RB | Sub | March | April | $60,000.00 | 15 Shelters | Ship and Install | |
| SDAG TP | Sub | May | June | $2,000,000.00 | 17 Station Shelters | Ship Only | |
| | | | **TOTAL** | **$6,420,000.00** | **$24,598,066.12** | | |

COTA — Bidding 3.7.2011 - Our pricing looks positive

OT SbX BRT — We have been working on supporting the architect with details for 2 years on this job - We will be specified

BF Transit — Pricing and drawings being worked on, and is the type of job we look for.

HTC- — 2 phases, just had the pre-bid conference call 3.3.2011 - 3 bidders, East cost, so tough competition

Boulder — ~~This job will surface again, sometimes.....funny things going on with the requirements.~~

SB Supershelters — We have been working on supporting the architect with details on this job - Existing, repeat client, but will go out to bid. It is exactly what we do. We will be specified

RB — We have been working with the city, and are specified on this job

SDAG TP — 2nd phase of a contract