Kenneth N. Russak (State Bar No. 107283)
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California 90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Comerica Bank

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>LNI CUSTOM MANUFACTURING, INC.,<br><br>Debtors. | CASE No. 2:11-BK-12416<br><br>Adv No.<br>Chapter 11<br><br>**OPPOSITION OF COMERICA BANK TO DEBTOR'S SUPPLEMENTAL EMERGENCY MOTION TO USE CASH COLLATERAL**<br><br>Date:   March 18, 2011<br>Time:  10:00 a.m.<br>Crtrm: 1375 |

Comerica Bank ("Comerica") Objects to the "Supplemental Motion for Authority to Use Cash Collateral, Etc." ("Supplemental Emergency Motion") filed on March 7, 2011 (Docket Number 59).

I. **THE SUPPLEMENTAL EMERGENCY MOTION VIOLATES LOCAL BANKRUPTCY RULE 9013-1(L)**

Local Bankruptcy Rule 4001-2 states that, inter alia, "The requirements of LBR 9013-1 through LBR 9013-4 apply to a motion… to approve the use of cash collateral." Local Bankruptcy Rule 9013-1(l) provides:

> (l) Motion Previously Denied. Whenever any motion for an order or other relief has been made to the court and has been denied in whole or in part, or has been granted conditionally or on terms, and a subsequent motion was made for the same relief in whole or in part

upon the same or any allegedly different state of facts, it is a continuing duty of each party and attorney seeking such relief to present to the judge to whom any subsequent motion is made, a declaration of a party or witness or certified statement of an attorney setting forth the material facts and circumstances surrounding each prior motion including the:

(1) the date of the prior motion;

(2) the identity of the judge to whom the prior motion was made;

(3) the ruling, decision or order on or prior motion; and (4) the new or different facts and circumstances claimed to exist, which either did not exist or were not showing up on the prior motion. The failure to comply with the foregoing requirement is grounds for the court to set aside any order or ruling made on the subsequent motion, and subjects the offending party or attorney to sanctions."

This Court has already conducted two hearings on a prior motion authority to use cash collateral.

On January 21, 2011, the Debtor filed its "Debtor's Emergency Motion to Approve Use of Cash Collateral, etc." (Docket Number 3) ("Original Cash Use Motion"). Two hearings on the Original Cash Use Motion were conducted by this Court. An initial hearing was conducted on January 28, 2011, at which time interim relief was ordered, over the written and oral objection of Comerica Bank; and a final hearing on the Original Cash Use Motion was set for February 9, 2011. (Docket 39.) Not only did Comerica Bank object to the Original Cash Use Motion, it also objected to the form of the interim cash use order and, in particular, requested that the February 9 hearing be conducted as a continued interim hearing, not a final hearing. (Docket Number 28.) Comerica's objection to the form of order, in that respect, was overruled; and this Court ordered that the February 9, 2011 hearing would be a "final hearing."

In the Original Cash Use Motion, the debtor requested entry of a cash use order that would permit it to use cash collateral during its case. (See Docket Number 3 at 2:16-18 & 14:5-16.) At the conclusion of the final hearing conducted on February 9, 2011, the Court did not grant cash use for the duration of the case. Instead, *at the Debtor's suggestion*, this Court authorized cash use only through March 11, 2011. The selection of the March 11 date was not arbitrary. It was based upon the Debtor's proposition that an "interested buyer" would present a letter of intent within two weeks after the February 9 hearing; and that the risk of declining Comerica's position was a risk

worth taking, when balanced against the short period of time it would take to move through the letter of intent stage on the then prospective sale. As Ms. Cohen argued at the February 9 hearing:

> MS. COHEN: Mr. Shapino has expressed an interest in buying the company or its assets, doing some kind of a 363 sale. And he indicated that he needs two weeks to complete an appraisal and come in with a letter of intent.
>
> He doesn't really talk about price in his declaration. I can represent, based on my conversations with him, that at least his view is that he brings in enough money to take out Comerica or close to it….
>
> So in terms of kind of a balancing--I'm going to do my balancing and I'll make my recommendations of what I think might be a good way to handle it today. In terms of the kind of balancing, **Comerica's position might honestly decline during the next 30 days**, although it doesn't really sound like it will. If so, then not much….
>
> My suggestion, Your Honor, based on all of these facts, I'd love to get the use of cash collateral for the rest of the case. I think that would be great. If the Court isn't inclined to do that today, I think it would be fair enough to give us a 30-day window.

February 9, 2011 Hearing Transcript, 5:19-6:1, 6:10–15, 7:9-13 (Docket Number 48) (emphasis added). And then at the conclusion of the hearing Ms. Cohen reiterated, and this Court adopted, the notion that it was appropriate to permit cash use under the circumstances only for a limited period of time in order to see whether a sale could be put together:

> MS. COHEN: And, again, sort of the downside, there is going to be relatively small change in position on this collateral level during the short period of time; whereas the whole company could get wiped out if the use of cash collateral--
>
> THE COURT: When you say the "short period of time," you're referring back to your 30 days?
>
> MS. COHEN: I'm suggesting 30 days, just because we all know where we are. I don't want this company to operate for nothing either. That's not even a Mr. Blakely's interest. He's on the hook personally as well. So if everything is going to lose value, he wants to get value out of the company as well on the payment to Comerica.

*Id.*, 26:10 – 21.

Unfortunately, not only did the letter of intent never materialize, Comerica's collateral position has in fact declined materially. These, **and other**, developments – or perhaps more

accurately "lack of developments"– will be discussed in more detail below. The important point at this stage is that the Debtor has violated Local Bankruptcy Rule 9013-1(l) by failing to discuss the Original Cash Use Motion in the manner required by that rule. This Court issued an order on the "*final*" hearing based upon a balancing of the risks imposed upon Comerica against the possibility that the sale touted by the Debtor might actually move forward towards completion, together with the adequate protection provisions of the order issued following the conclusion of the Final Hearing. For this reason alone, the Supplemental Emergency Motion should be denied.

Comerica Bank would be prejudiced if this Court were not to adhere to its Local Rules. Comerica Bank believes that this Court committed error when it granted the Original Cash Use Motion; and had it understood that this Court had made anything other than a final decision to permit cash use only through March 11, 2011, it might well have elected to seek appellate review of the order granting the Original Cash Use Motion. Lurching from one emergency motion to the next, in violation of the local rules, denies Comerica Bank due process.

## II. COMERICA'S COLLATERAL POSITION HAS DEGRADED SINCE THE PETITION DATE.

Comerica Bank holds a liquidated claim in the Petition Date amount of $1,389,442.52 and an additional unliquidated and contingent claim of up to one million dollars in connection with a letter of credit issued by Comerica at the Debtor's request in connection with some sort of litigation bond.[1] Comerica Bank's claims are secured by fully perfected and unavoidable liens

---

[1] Comerica Bank requests, pursuant to Rule 201 of the Federal Rules of Evidence that this Court take judicial notice of the document previously filed in this case:

1. Comerica Bank's Proof of Claim filed in this case on January 26, 2010 as Claim No. 2-1.
2. Docket No. 12: Notice of Perfection of Rents and Demand for Sequestration of Cash Collateral Pursuant to 11 U.S.C. Sections 362(b)(3), 353(c)(4), and 546(b)
3. Docket No. 18: Declaration of Natali Amir in Opposition to Debtor's Emergency Motion for Use of Cash Collateral
4. Docket No. 20: Declaration of Kenneth N. Russak in Opposition to Debtor's Emergency Motion for Use of Cash Collateral
5. Dock No. 30: First Supplemental Declaration of Natali Amir in Opposition to Debtor's Emergency Motion for Use of Cash Collateral

(footnote continued)

1  encumbering, *inter alia*, all of the Debtor's accounts receivable, contracts, work in process and
2  inventory ("Petition Date Current Assets").  The Debtor's business plan is to convert the Petition
3  Date Current Assets into cash and use that cash not only to complete current contracts, but also to
4  fund its business operations while it attempts to obtain new contracts.  Debtor proposed (and
5  continues to propose) to convert the Petition Date Current Assets into cash and to use that cash to
6  fund the ongoing operations of the Debtor.
7        The Court found and concluded that the Debtor had sustained its burden of proof on the
8  question of adequate protection because, among other things, the maintenance and preservation of
9  the debtor's business afforded such protection.  The essential proposition was, as vociferously
10 argued by the Debtor at the prior hearings on the Original Cash Use Motion that the debtor was "
11       Comerica objected to the debtor's Original Cash Use Motion because the Debtor submitted
12 no competent evidence to support its proposition that the Petition Date Current Assets would be
13 replaced with new accounts receivable generated by new contracts.  On the Petition Date, the
14 Debtor had $1,400,000 in collectible accounts receivable and $7,197,476.60 of contracts
15 "currently in production" under which the debtor had already billed $6,503,677.65 cents, leaving
16 an unbilled balance of $503,106.81.  The Debtor proposed to complete the uncompleted contracts
17 using existing inventory, and some additional raw materials purchases, so that it might generate
18 from the Petition Date Current Assets approximately $2,000,000 in gross receipts.  The Debtor
19 forecasted that during the period in which the Petition Date Current Assets were to be liquidated
20 roughly the same dollar amount in expenses would be paid to fund the operations of the Debtor.
21 The Debtor submitted no competent evidence of the value of any of its other assets, much less the
22 value of Mr. Blakely's guarantee of Comerica's claim or the deed of trust on his residence securing
23 that guarantee.  Thus, the linchpin of the Debtor's adequate protection argument was its assurance
24 to this court that the debtor was "constantly getting new contracts."  As Ms. Cohen stated at the

---

26   6.  Docket No. 34: Declaration of Bradley P. Drawer in Support of Opposition to
     Debtor's Emergency Motion to Approve Use of Cash Collateral
27   7.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  February 9 hearing on the Original Cash Use Motion:

2      MS. COHEN: But then they [Comerica] say: Well, gee, we
3  don't have any anticipated future business, so we shouldn't be able to operate.

4      And they really can't have it both ways. We went over this
5  last time, and I think it's in Mr. Blakely's declaration. They are constantly getting new contracts. I think--I'm just going to pull up
6  the new declaration. Mr. Blakely's new declaration indicates not just that there's the one new contract you mentioned with regard to
7  Disney but there's others that are in conversation, their booking, they're negotiating. Not everything is always signed that day.

8  February 9 transcript, 21:20 – 22:6. At the January 28 hearing, the "last time," to which Ms.
9  Cohen referred above, the Debtor made a commitment to provide copies of contracts as they were
10 formed. At that hearing, she argued:

11     MS. COHEN: The statement that there are no new contracts
   is just--also is incorrect. Paragraphs 4, 5 and 6 of Mr. Blakely's
12 supplemental declaration addressed the additional contracts that are in progress, and I don't think that any hearsay reference to a website
13 is admissible in opposition to that.

14     Sure, as these contracts form, we will submit documents.

15 January 20 transcript, 19:18 – 25. The paragraphs to which Ms. Cohen refers are found in Mr.
16 Blakely's "Supplemental Declaration of Scott Blakely in Support of Emergency Motion to
17 Approve Use of Cash Collateral," Filed on January 26, 2011 as Docket Number 15. He refers to
18 the Elk Grove contract, the El Monte contract, and the subcontract with Martin Outdoor Media,
19 Inc., for a primary contract between the City of Los Angeles and Martin Outdoor Media. Mr.
20 Blakely testified that the first two contracts are in "their final stages."

21     It is now seven weeks later and the debtor has not submitted a single mutually executed
22 contract of any substance for any new work. Exhibit "G" to the declaration filed by Mr. Blakely in
23 support of the pending Supplemental Emergency Motion reports that the Debtor was to receive an
24 order from "EG", presumably Elk Grove, by "early March." Early March has come and gone.
25 Apparently the order has not yet been received. And on the same exhibit, Mr. Blakely testifies
26 that the "EM" (presumably El Monte) contract has been received but includes a requirement that
27 the Debtor post a bond. Again, the same exhibit reports that the debtor "expects to finalize
28 contracts in March" for its subcontract under the Martin Outdoor Media Contract with the City of

1   Los Angeles.  The Debtor, however, submits no factual basis to support its conjecture.  There is,
2   for example, no testimony that Mr. Blakely has communicated with Martin Outdoor Media and
3   has been told by Mountain Outdoor Media to expected delivery of such contracts.
4       In the meanwhile, the debtor reports that it has collected over $672,000 in cash,
5   presumably all from Petition Date Current Assets and has spent $329,000 of the $776,000 in
6   expenses its forecast for the same.  It touts the difference between the forecasted and actual as if
7   that were permanent savings that have already dropped to the bottom line.  But the more likely
8   explanation is simply that the Debtor is deferring the recognition of expenditures so that it can get
9   past the hearing on the pending Supplemental Emergency Motion.  In any event, it is abundantly
10  clear that the debtor has not received a single large new contract since it filed bankruptcy.  It is
11  clear that its financial condition is interfering at least with its ability to conclude a contract with
12  the City of El Monte.  All of the risks which Comerica Bank feared might materialize appear to be
13  materializing.

14  **III.    ADEQUATE PROTECTION**

15      Notwithstanding the foregoing, Comerica Bank is negotiating with the Debtor concerning
16  adequate protection provisions for an agreed order for additional cash use of a very limited
17  duration.  In the event that we are unable to reach agreement on such provisions, we will advise
18  the Court of Comerica Bank's proposed adequate protection provisions and proposed additional
19  cash use at the hearing on the Supplemental Emergency Motion.

20  **IV.    COMPLIANCE WITH CASH USE ORDER**

21      The Debtor has not complied with its obligations under the prior cash use orders.
22  Comerica will not detail its noncompliance at this time.  Suffice it to say, in the event the Court
23  issues an order over the objection of Comerica permitting additional cash use, Comerica
24  respectfully requests that the court incorporate a mechanism for an expedited determination by this
25  court of any disputes concerning future compliance with such order.

## V. CONCLUSION

In the event that the parties are unable to reach agreement on the terms and conditions of a consensual cash use order, Comerica bank respectfully requests that this Court deny the Supplemental Emergency Motion and issue such additional orders as are appropriate under the circumstances.

DATED: March 16, 2011						FRANDZEL ROBINS BLOOM & CSATO, L.C.


							By:	/S/ Kenneth N. Russak
								KENNETH N. RUSSAK
								Attorneys for Comerica Bank

## PROOF OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 6500 Wilshire Boulevard, Seventeenth Floor, Los Angeles, California 90048-4920

On March 16, 2011, I served true copy(ies) of the OPPOSITION OF COMERICA BANK TO DEBTOR'S SUPPLEMENTAL EMERGENCY MOTION TO USE CASH COLLATERAL, the original(s) of which is(are) affixed hereto. to the party(ies) on the attached service list.

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such document(s) were placed in envelopes addressed to the person(s) served hereunder for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

☐ **BY FAX TRANSMISSION:** At approximately _____, I caused said document(s) to be transmitted by facsimile. The telephone number of the sending facsimile machine was (323) 651-2577. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☐ **BY E-MAIL:** At approximately _____, I caused said document(s) to be transmitted by electronic mail. The name(s) and e-mail addresses of the person(s) served are set forth in the service list. The document was transmitted by electronic transmission and without error.

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list obtained from this Court.

☐ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.

817249.1 | 042500-0246

9

1

2 ☐ **BY EXPRESS MAIL:** I deposited such document(s) in a box or other facility regularly maintained by the United States Postal Service, in an envelope or package designated by the United States Postal Service with delivery fees paid or provided for, addressed to the person(s) served hereunder.

I certify under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on March 16, 2011, at Los Angeles, California.

/s/ Kenneth N. Russak
Kenneth N. Russak

**SERVICE LIST**